

Daniel M. Scott, Federal Public Defender, Minneapolis, Minn., for appellant.

Jon M. Hopeman, Asst. U.S. Atty., Minneapolis, Minn., for appellee.

Before ARNOLD, Circuit Judge, BRIGHT, Senior Circuit Judge, and John R. GIBSON, Circuit Judge.

BRIGHT, Senior Circuit Judge.

Barbara Lynn Burton appeals from an order of the district court revoking probation and requiring her to serve thirty months imprisonment, less time previously served, plus a special parole term of five years. This sentence followed from a January 1987 conviction for cocaine distribution in which the district court initially had imposed the thirty-month sentence, but suspended all but six months of that sentence and placed Burton on probation for the following three years.

Pursuant to terms of the probation order, Burton gave urine specimens on September 8 and 28, 1987. When these specimens tested positive for cocaine upon ex-

UNITED STATES of America, Appellee,

v.

**Barbara Lynn BURTON, Appellant.**

No. 88–5077.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 14, 1988.

Decided Feb. 2, 1989.

amination by a testing laboratory in California, Burton's probation officer initiated proceedings which resulted in the order revoking probation.

The appeal from the revocation order raises two issues. First, Burton asserts that the laboratory urinalysis test reports supported by an affidavit from the director of the laboratory constituted hearsay evidence, the admission of which violated the defendant's right to due process and her right to confront the witnesses against her.

Second, Burton attacks the chain of custody of the specimens from the time she urinated into a container on each occasion until the specimens were delivered by mail to the laboratory. Burton contends that no reliable evidence exists to establish that the test results reported necessarily were hers.

On review of the record, we affirm.

## I. BACKGROUND

The district court's findings of fact, which the appellant does not attack, disclose that Burton presented herself to the Multi Resource Centers (MRC) in Minneapolis on each of the dates in question and gave a urine specimen to an authorized person. The MRC has a contract with the United States Probation Office for the District of Minnesota to handle the specimens of probationers and forward the specimens to the laboratory, in this case PharmChem Laboratories, Inc., of California, for analysis.

The findings disclose the following handling of the urine specimens. On September 8, 1987, an MRC case manager watched Burton pass a urine specimen into a styrofoam cup. The case manager poured the specimen into a plastic bottle and placed a yellow adhesive label on the bottle bearing Burton's name, the date, and requests for the testing. The bottle then was placed in an unlocked box on the desk of Nancy Bohmer, the MRC's secretary.

At the close of the business day, Bohmer processed all of the specimens. The MRC's standard processing procedure consists of filling out a processing label and attaching it to the bottle on forms supplied by the laboratory, then recording the client's name and assigned specimen number in the MRC log. The specimens are boxed and set aside to be mailed the next morning.

Bohmer could not follow the standard procedure, however, to process the September 8, 1987, specimen taken from Burton, and presumably others. As explained by the district court in finding of fact number 14, the following occurred:

> At the time of the taking of the sample from Barbara Burton on September 8, 1987, the MRC had run out of its supply of PharmChem forms and also PharmChem mailing boxes. As a result, Nancy Bohmer was not able to process the September 8, 1987, sample in the customary fashion but instead retained the sample in the refrigerator at the MRC facility with the yellow sticky attached. The urine specimen was later processed by Ms. Bohmer and was received by Pharm Chem on September 28, 1987, and tested on September 29, 1987.

The September 28 specimen, on the other hand, received routine handling. A case manager, Jeanne Schroeder, obtained the specimen and placed the bottled and labelled specimen on the secretary's desk. The next morning, the secretary forwarded the specimen by mail to PharmChem in California.

Both the September 8 and September 28 urine specimens tested positive for cocaine usage.

The evidence proffered by Burton included her denial of cocaine usage and the testimony of an investigator for the federal public defender indicating some laxity by the MRC in keeping specimens either under lock and key or under constant visual observation. The appellant's evidence also indicated that an investigator for the federal public defender's office, which was representing Burton, entered the office of Bohmer, the MRC secretary, without challenge.

## II. DISCUSSION

We turn to the first issue the appellant raises: whether the admission of the reports, absent live witness testimony on

foundation, violates Burton's confrontation rights. This court's opinion in *United States v. Bell*, 785 F.2d 640 (8th Cir.1986), requires that we reject the appellant's argument. In *Bell*, this court ruled in probation revocation proceedings that good cause existed to permit the introduction of urinalysis reports, made by a laboratory in California, which showed the presence of drugs. The opinion written by United States Circuit Judge Arnold stated:

> The urinalysis laboratory reports bear substantial indicia of reliability. They are the regular reports of a company whose business it is to conduct such tests, and which expects its clients to act on the basis of its reports. Moreover, we note that no evidence was presented to contradict Bell's drug usage, and that Bell has made only general, unsubstantiated claims that the laboratory tests may have been defective. We conclude that under these circumstances there was good cause to permit the government to avoid the difficulty and expense of bringing the chemist or chemists who performed the tests from California to Arkansas to testify. In our experience, that sort of formal testimony rarely leads to any admissions helpful to the party challenging the evidence.

785 F.2d at 643 (footnote and citation omitted).

█ We also reject the appellant's challenge to the chain of custody of her urine samples. The trial court's findings, supported by the record, indicate that the bottles of urine retained proper identification labels from receipt of the samples from Burton to their final delivery to the laboratory and return of reports from the laboratory to the MRC. The district court found the chain of custody adequate, and we approve of that finding. We, however, make further comment.

The evidence did indicate some laxity in the direct observation and control of the samples from their taking by the MRC to submission of the specimens to the laboratory. The samples remained throughout the day in an unlocked box on the desk of the secretary, who occasionally was away from her desk and her office. Moreover, outsiders might have had access to the secretary's work area. Finally, the delay of about two weeks in the mailing of the September 8 sample seems inexcusable, notwithstanding that the MRC stored the sample in a locked refrigerator.

A Drug Aftercare Specialist in the United States Probation Office for the District of Minnesota filed a statement in affidavit form as part of the record in this case, stating in part:

> Included in our contracts is the use of urinalysis as an appropriate method to confirm suspected use of illict [sic] drugs. As per written contract with the programs, "The collector shall personally observe the client void into a collection bottle and shall verify that the urine collected is in fact the client's. The collector shall carefully label the collection bottles."

> As per Chapter Ten, (Drug Abuse and Special Sentencing) of the *Guide to Judiciary Policies and Procedures, Probation Manual*, "To maintain a consistent chain of evidence, extreme care shall be employed throughout the collection process. The claim [sic] of evidence must insure the security of all supplies and collected urine, as well as the accurate recording and reporting of test results. Each district must establish specific procedures for the collection, labeling, recording, and reporting of urine specimens and laboratory tests."

> The specific procedure I have established for the District of Minnesota is for the collector of urine to follow through until the sample is ready to mail to the laboratory.

> In other words, the collector takes the sample bottle, labels it properly with the provided laboratory label, places it in the prepaid mailer box with the paperwork forms, and tapes the box shut in one continuous process. The process is recorded in a central file and the mailer is either mailed or placed in a secure place for outgoing mail.

> That is the optimum and proper procedure for urine collection.

The record in this case suggests that the MRC's ordinary handling of specimens may require some tightening up to be in strict accord with proper procedure. On filing of this opinion and our comments, we suggest the United States Probation Office for the District of Minnesota take such action as is appropriate to assure compliance with recommended procedures relating to the taking and handling of specimens for drug testing purposes.

AFFIRMED.