*1276 OPINION
By the Court,
Young, J.:
Appellant John Jaeger was convicted of grand larceny, given a seven year suspended prison sentence, and placed on probation *1277 for a period not to exceed five years. A probation revocation hearing was conducted after Jaeger allegedly tested positive for methamphetamine usage, and Jaeger’s probation was revoked. Jaeger argues that the district court erred by quashing his subpoena prior to the hearing, by not requiring the prosecution to call as witnesses the people who conducted the laboratory analysis of his urine samples, and by considering his community service obligations when deciding to revoke his probation.
We conclude that Jaeger’s arguments lack merit, and we therefore affirm the district court’s order.

FACTS

On March 1, 1990, Jaeger took his paycheck to the Carson Station Casino after he got off work. While at the Carson Station Casino, he got drunk and gambled away his entire paycheck. Jaeger was ashamed to go home to his wife and children with no money, so he stole the purse of an eighty-five-year-old woman, knocking her down in the process. Jaeger was arrested that night and shortly thereafter admitted to committing the crime.
On April 17, 1990, Jaeger pleaded guilty to one count of grand larceny. Because of Jaeger’s lack of a prior criminal record, supportive family environment, and desire to remain sober, the Department of Parole and Probation recommended probation. On May 22, 1990, the trial judge sentenced Jaeger to a term of seven years in prison, suspended that sentence, and placed Jaeger on probation for a period not to exceed five years. As a condition of probation, Jaeger agreed to submit to random, warrantless searches by Parole and Probation officers for the presence of alcohol, and this condition included chemical testing. Additionally, Jaeger agreed to serve 300 hours of community service, submit to substance abuse evaluation, and if necessary, submit to substance abuse counseling.
On November 28, 1990, the Department of Parole and Probation filed an incident report concerning Jaeger. The report stated that in late November 1990 Jaeger had twice been seen by a sheriff’s detective consuming alcohol in a bar. The report also stated that an officer of the Department of Parole and Probation had seen Jaeger drinking alcohol once in August 1990 and once in October 1990. No action was taken against Jaeger.
On October 2, 1991, the Department of Parole and Probation filed a probation violation report. The report indicated that Jaeger had been arrested for a DUI on September 30, 1991, after his breath test showed a .18 percent blood alcohol content. The report also indicated that since being placed on probation, Jaeger had repeatedly failed to follow the conditions of his probation in that he had completed only forty hours of community service in *1278 seventeen months and had not attended counseling. On November 14, 1991, a probation revocation hearing was held. After admitting to all the probation violations, Jaeger was placed on house arrest for ninety days, and his probation was reinstated.
On February 16, 1994, the Department of Parole and Probation filed a second probation violation report. The report stated the following allegations: (1) on January 17, 1994, Jaeger was arrested on one count of being an ex-felon in possession of a firearm, but that case was dismissed; (2) on January 27, 1994, Jaeger had taken a urine test and tested positive for methamphetamine; (3) Jaeger had been in the company of a person with a known criminal record; and (4) Jaeger had continually failed to perform his community service work. Based on this report, on February 17, 1994, a bench warrant was issued for Jaeger’s arrest. On February 25, 1994, Jaeger was arrested. A probation revocation hearing was set for March 22, 1994.
Sometime between Jaeger’s arrest and the probation revocation hearing, Parole and Probation officers and Tri-Net officers conducted a search of Jaeger’s home. Julie Jaeger, Jaeger’s wife, testified as follows regarding the search. She was sleeping on the couch when the officers came through the door. A female Parole and Probation officer performed a full strip/body cavity search on her. The officers took the three children, ages five, four, and one, and attempted to search them, but the children were taken by a neighbor before the police could perform the search. The search yielded a small amount of marijuana. Mrs. Jaeger was arrested for possession of marijuana; however the charges were later dismissed. The Jaegers filed a complaint with the Department of Motor Vehicles, Internal Affairs Unit concerning the search, and an investigation ensued. Jaeger was unsuccessful in his various attempts to obtain the results of that investigation.
On March 22, 1994, a hearing was held regarding the second probation violation report. Jaeger admitted to the charges in the report. He also stated that he had completed 136 hours of his community service obligation. At the conclusion of the hearing, the judge reinstated Jaeger’s probation, added extensive supervision requirements, and ordered Jaeger to work toward completing his community service requirements whenever he was not otherwise employed.
On January 5, 1995, the Department of Parole and Probation filed a third probation violation report. The report stated that on December 4, 1994, Jaeger had been arrested for child endangerment after leaving his five-year-old son unattended in a car for approximately one and one-half to two hours with a razor knife on the seat and a “dagger” stuck into the dashboard. Jaeger also had failed to pay traffic fines for driving on a suspended license *1279 and had refused to comply with a court ordered substance abuse counseling program. Additionally, the report stated that Jaeger tested positive for methamphetamine on December 22 and 29, 1994. This time Jaeger denied the allegations, and a third revocation hearing was set.
Prior to the revocation hearing, Jaeger subpoenaed Investigator Dan Luke (“Luke”) of the Department of Motor Vehicles and Public Safety, Internal Affairs Unit, requesting production of the case file concerning the search of the Jaegers’ house, including the final investigation report. According to Jaeger, the file was necessary to prove his defense theory that the Department of Parole and Probation had fabricated the December drug test results in retaliation for Jaeger’s attempts to expose the criticism of the Parole and Probation employees presumably contained in the investigation report. The prosecutor filed a motion to quash the subpoena based on the fact that producing such information would be unreasonably burdensome and also that the information was confidential. The judge granted the motion to quash, stating that the investigation report was not relevant to the issue of whether Jaeger tested positive for drug use.
At the revocation hearing commenced on March 10, 1995, Laura Alvarez, Jaeger’s probation officer, provided the bulk of the testimony against Jaeger. She testified that Jaeger had tested positive for methamphetamine use, and Jaeger objected to this testimony on the grounds that Alvarez had no personal knowledge of the actual testing procedures employed by the laboratory technicians, could testify only as to the drug testing procedures recommended by the Department of Parole and Probation, and was merely supplying a hearsay account of the test results. Jaeger’s counsel argued that permitting Alvarez to testify deprived Jaeger of the right to confront those who had conducted the drug tests. Jaeger’s counsel further argued that she needed to question those who had conducted the drug tests in order to prove that the results of those tests had been fabricated. The court overruled the objections, stating that the right to confront witnesses applies in the guilt phase but does not apply to probation proceedings and that Alvarez’s testimony constituted reliable hearsay.
Alvarez stated that the December 22, 1994 urine sample was tested by the Department of Parole and Probation on December 28, 1994, and that the results showed the sample tested positive for methamphetamine. She then stated that the sample was sent to an independent laboratory for confirmation, and again, the sample tested' positive for methamphetamine. On December 29, 1994, the Department of Parole and Probation collected and tested another urine sample, and again, the sample tested positive *1280 for methamphetamine. Alvarez testified as to how the drug tests were normally conducted, but she did not personally conduct the drug tests at issue, was not present when the tests were conducted, and therefore could not state that the laboratory technicians followed the normal, recommended procedures. Prompted by questions from the district judge, Alvarez stated that Jaeger still needed to complete 100 hours of his community service obligation. Finally, she testified that Jaeger had failed to complete substance abuse counseling and exhibited a general lack of cooperation with regard to his probation requirements.
The district judge concluded that Jaeger violated the terms and conditions of his probation. Specifically, the district judge found that Jaeger had “testfed] dirty for controlled substances,” failed to cooperate with his Parole and Probation officer, and failed to complete his community service obligation. After making these findings, the court revoked Jaeger’s probation just two months before the probationary period was scheduled to end and sentenced Jaeger to serve his entire seven year prison sentence.

DISCUSSION

The subpoena

Jaeger argues that the district court erred when it quashed his subpoena requesting the investigation report because he had a right to present a defense to the prosecution’s claims, the requested documents were relevant and not privileged, and compliance with the subpoena would not have been overly burdensome. We disagree.
This court has held that “[pjarole and probation revocations are not criminal prosecutions; the full panoply of constitutional protections afforded a criminal defendant does not apply.” Anaya v. State, 96 Nev. 119, 122, 606 P.2d 156, 157 (1980). While a criminal defendant has the right to subpoena documents in support of his defense, we conclude that a probationer does not enjoy the same rights.
Even in the context of a full criminal trial, a criminal defendant is only entitled to subpoena documents that are shown to be material to his or her defense. Pennsylvania v. Ritchie, 480 U.S. 39, 59 (1986). In Ritchie, the defendant requested disclosure of files compiled by a state child protection agency. Id. at 43. The files related to charges of child abuse against the defendant, but were protected from disclosure by statute. Id. The defendant subpoenaed the documents, arguing that he was entitled to the information because the file “might contain names of favorable witnesses, as well as other unspecified exculpatory evidence.” Id. at 45. The lower court denied the disclosure. Id. The defendant *1281 appealed, arguing the denial violated his Sixth Amendment right to confrontation through the Fifth Amendment right to due process. Id. at 46. The Supreme Court held that “the ability to question adverse witnesses . . . does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony.” Id. at 53. The Court also held that a “defendant’s right to discover exculpatory evidence does not include the unsupervised authority to search through the [state’s] files.” Id. at 59. Further, “[u]nless defense counsel becomes aware that . . . exculpatory evidence was withheld and brings it to the court’s attention, the prosecutor’s decision on disclosure is final. Defense counsel has no constitutional right to conduct his own search of the State’s files to argue relevance.” Id. (Emphasis added.)
Here, Jaeger has made no showing of materiality. Like the defendant in Ritchie, he asserts only that the information contained in the investigation report might be helpful to his “conspiracy theory” defense. The dissent reasons that the mere possibility that these documents “might have proven that theory” is sufficient to require disclosure. We disagree. The holding in Ritchie is clear: Due process does not require the disclosure of state files on the mere assertion that those files might be helpful to a defendant’s case. See Ritchie at 53. Therefore, we conclude the district court properly quashed Jaeger’s subpoena.
Furthermore, we conclude that the investigation report was not relevant to the issue of whether Jaeger tested positive for drug use. Relevant evidence is “evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.” NRS 48.015. The contents of the investigation report have no bearing on whether Jaeger tested positive for drug use, and therefore, the district court properly quashed the subpoena on the grounds that the materials it requested were irrelevant.

Cross-examination of witnesses for urinalysis evidence

Jaeger also argues that the district court erred by refusing to require the prosecution to present any firsthand evidence of how the drug tests were conducted. Jaeger argues that this is important because the second prong of his defense was to attack the accuracy of the drug tests. However, the State argues that the testimony of the witness presented against Jaeger constituted reliable, admissible hearsay and that Jaeger had the opportunity to confront and cross-examine this witness.
*1282 The main witness against Jaeger was Alvarez, who testified as to the normal procedures followed by the Department of Parole and Probation when testing a urine sample. Alvarez, however, did not personally perform the tests, and therefore Jaeger objected to the admission of Alvarez’s testimony, arguing that it was hearsay and also that it denied him the right to confront witnesses against him, namely the people who actually performed the tests.
Initially, we note that the district court erred in stating that a probationer did not have the right to confront witnesses against him at a revocation hearing. This court has explicitly held that “a probationer has a due process right to confront and question witnesses giving adverse information.” Anaya, 96 Nev. at 123, 606 P.2d at 158.
However, we conclude that Jaeger was not deprived of his right to confront adverse witnesses because he was able to confront and cross-examine Alvarez. Jaeger argues that Alvarez’s testimony was hearsay and therefore inadmissible; however, “[a] statement is not excluded by the hearsay rule if its nature and the special circumstances under which it was made offer assurances of accuracy not likely to be enhanced by calling the declarant as a witness, even though he is available.” NRS 51.075(1). We conclude that Alvarez’s testimony was properly admitted because it was reliable and made under assurances of accuracy not likely to be enhanced by calling the people who actually performed the drug tests. This reliability eliminated the need to call as witnesses the laboratory technicians who analyzed Jaeger’s urine samples.
The dissent asserts that U.S. v. Martin, 984 F.2d 308 (9th Cir. 1993) is “directly on point.” However, upon closer examination, we find an important distinction. In Martin, the district court revoked the defendant’s probation for several violations, but the defendant received a sentence enhancement for testing positive for a controlled substance. Id. at 309. Thus, a separate liberty interest was attached to this particular probation violation.
Here, as in Martin, Jaeger’s parole was revoked for several violations, including (1) child endangerment, a gross misdemeanor; (2) failing to pay a traffic fine for driving on a suspended license; (3) refusing to comply with a court order to attend substance abuse counseling; and (4) use of methamphetamine. However, unlike the facts in Martin, the drug use did not carry with it a separate liberty interest from the other violations. Applying the United States Supreme Court holding in Morrissey v. Brewer, 408 U.S. 471 (1971), the Ninth Circuit stated, “[t]he *1283 more significant particular evidence is to a finding, the more important it is that the releasee be given an opportunity to demonstrate that the proffered evidence does not reflect ‘verified fact.’ ” Id. at 311. Thus, unlike Martin, the significance of the finding of drug use to Jaeger’s ultimate revocation is substantially reduced because the ultimate result — Jaeger’s revocation — would have been the same for any one of the violations. Therefore, we conclude the district court did not err in refusing to compel the prosecution to call the laboratory testing officers as witnesses.

Consideration of community service

Jaeger argues that the district judge erred by considering at the revocation hearing the amount of community service that he had performed because Jaeger had not been given notice that his community service obligation would be an issue at the hearing.
The “Notice of Preliminary Hearing” form received by Jaeger on February 1, 1995, stated that he would have to appear at a revocation hearing and answer to charges of use of controlled substances, law and conduct violations (alleged child endangerment), and substance abuse evaluation violations. Jaeger was not notified that his failure to complete his community service might serve as the basis for the revocation of his probation. However, at the revocation hearing, the trial judge requested information regarding the amount of community service that Jaeger had performed. Alvarez stated that Jaeger had performed 200 hours of his community service and had 100 hours remaining.
The United States Supreme Court has stated that in regard to a probation revocation hearing, due process requires that a probationer be provided with written notice of the claimed violations of probation. Gagnon v. Scarpelli, 411 U.S. 778, 786 (1973). In compliance with this rule, NRS 176.217(1)(c) provides that prior to the preliminary hearing, probationers facing revocation must receive advanced notice of the alleged probation violations. This court has also made it clear that due process protections available at the preliminary hearing apply at the final revocation hearing with equal or greater force. Anaya, 96 Nev. at 122-23, 606 P.2d at 158.
While Jaeger was not provided with advance notice that his community service obligation was going to be an issue at either the preliminary hearing or the final revocation hearing, we conclude that the district judge did not err in considering such information. Completing the community service obligations was part of Jaeger’s probation, and the district judge had the right to *1284 question Jaeger regarding the status of his probation requirements. Therefore, we find no error in the district judge’s inquiries.

CONCLUSION

We conclude that the district court properly quashed Jaeger’s subpoena, properly refused to require the prosecution to call the laboratory technicians who actually performed the drug tests on Jaeger as witnesses, and properly considered the status of Jaeger’s community service obligation. Therefore, we affirm the district court’s revocation of Jaeger’s probation.
Maupin, J., concurs.