**UNITED STATES of America, Plaintiff—Appellee,**

v.

**Don Phillip PARKINSON, Defendant— Appellant.**

No. 05–50255.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 16, 2006.

Filed March 6, 2006.

Christina Coates, Esq., Office of the U.S. Attorney Criminal Division, Los Angeles, CA, for Plaintiff–Appellee.

James H. Locklin, Esq., Federal Public Defender's Office, Los Angeles, CA, for Defendant–Appellant.

Before: GOODWIN, B. FLETCHER, and CALLAHAN, Circuit Judges.

MEMORANDUM *

█ Parkinson appeals the district court's revocation of his supervised release for submitting an invalid urine sample incident to his drug rehabilitation program.

At the revocation hearing, the government called Parkinson's probation officer, Amy Young, to testify that Parkinson's urine sample was flushed (diluted with water). One piece of objective evidence that the government used to prove that the sample was flushed was the specific gravity measurement taken at the time Parkinson submitted his sample. However, Probation Officer Richard Coleton, not Young, witnessed and tested Parkinson's urine sample. Coleton reported the results of the test to Young. The government sought to have Young recount Coleton's statements on the stand and Parkinson made a hearsay objection. The district court allowed Young's testimony over Par-

kinson's objection. Coleton was not called as a witness.

In addition to recounting Coleton's statements, Young also testified that she had spoken with Parkinson about the urinalysis prior to the day of testing. According to her testimony, in that conversation, Young told Parkinson that if he drank a lot of water prior to the test it could result in a flushed sample.

Parkinson then took the stand and admitted to drinking a lot of water before his drug test. Parkinson also admitted that he knew he was required to submit a valid urine sample, that a flushed sample was not valid, and that Young had told him drinking a lot of water could result in a flushed sample. Although he never told Young or Coleton at the time he submitted his sample, on the stand, Parkinson explained his high water consumption as a medical necessity.

Ultimately, the district court found that Parkinson submitted an invalid urine sample and revoked his supervised release. Parkinson argues that his due process right to confrontation was violated when the district court received Young's hearsay evidence. He also argues that this error was not harmless because the government needed the hearsay to revoke his release.

We have previously held that
[b]ecause revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions[,] the full protection provided to criminal defendants, including the Sixth Amendment right to confrontation, does not apply to them. Rather, a due process standard is used to determine whether hearsay evidence admitted dur-

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

ing revocation proceedings violates a defendant's rights.

*United States v. Hall*, 419 F.3d 980, 985 (9th Cir.2005) (internal citations and quotations omitted). In cases involving a releasee's right to confrontation, the due process standard requires us to utilize the *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), balancing test to "balanc[e] the [releasee's] right to confrontation against the Government's good cause for denying it," *United States v. Martin*, 984 F.2d 308, 310 (9th Cir.1993) (internal quotations and citations omitted).

Parkinson's admissions and Young's nonhearsay statements were sufficient to establish that Parkinson had violated a condition of his supervised release and, therefore, the government did not need the hearsay to establish grounds for revocation. Accordingly, Parkinson's interest in confronting the witness was weak. *See Hall*, 419 F.3d at 986–87 (finding that nonhearsay evidence, including admission by the defendant, was sufficient to establish violation and made defendant's interest in excluding hearsay evidence weak). The record in this case does not explain why the government failed to call Coleton. "Thus, no cause has been shown for denying [Parkinson] his confrontation rights— there is nothing at all to put on the Government's side of the scale." *United States v. Comito*, 177 F.3d 1166, 1172 (9th Cir.1999).

■ Although Parkinson's interest in confronting the witness was weak, there is nothing to support the government's denial of that right. Weighing Parkinson's interest against the government's, Parkinson's weak interest prevails over the government's non-existent interest, and thus the district court erred in overruling the objection. Parkinson's due process confrontation right was, therefore, violated. The question then becomes whether this error

was harmless beyond a reasonable doubt. *Id.* at 1170.

We hold that it was. Although Parkinson's admissions and Young's nonhearsay testimony are inconclusive, they are sufficient to establish that Parkinson knowingly submitted a diluted sample. Therefore, because the nonhearsay evidence was sufficient to establish Parkinson's violation, the admission of the hearsay testimony was harmless beyond a reasonable doubt.

AFFIRMED.

BETTY B. FLETCHER, dissenting.

I respectfully dissent. Parkinson's due process rights were violated and the error was far from harmless.

The majority recites the law that governs the right to confrontation in revocation hearings, analyzing it as a due process violation, not a violation of the Sixth Amendment right to confrontation. *United States v. Hall*, 419 F.3d 980, 985 (9th Cir.2005). It acknowledges that the court must apply the balancing test set out in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), to determine whether there has been a due process violation in the admission of hearsay evidence at a revocation hearing. It does not deny that *Morrissey* requires the court to weigh the releasee's "right to confrontation against the Government's good cause for denying it." *United States v. Martin*, 984 F.2d 308, 310 (9th Cir.1993). So far so good.

It is at this point that the majority's analysis goes awry. The majority's first mistake is to find Parkinson's interest in confrontation, one side of the *Morrissey* balancing test, to be "weak." When evaluating a releasee's right to confrontation, among the factors the court should consider are "the importance of the evidence to the court's ultimate finding, the virtually

complete denial of any opportunity to refute the evidence, and the consequences of the court's finding." *Martin*, 984 F.2d at 311. The majority concludes that the absence of the testing officer was harmless on the ground that Parkinson's testimony and Young's non-hearsay testimony were sufficient to establish that Parkinson had violated a condition of his supervised release: that is, submission of an invalid urine sample was established, and therefore revocation was appropriate, even without consideration of Young's hearsay testimony. This is simply, wrong.

Young's non-hearsay testimony consisted of her recalling that she had told Parkinson that drinking a lot of water could result in a flushed sample. Parkinson testified that he had been drinking a lot of water for medical purposes prior to his drug test. This testimony does not establish that Parkinson's urine sample was in fact flushed, the critical issue in determining whether he had violated a condition of his supervised release. The majority relies on these vague statements as proof of violation; by contrast, a test-result finding a flushed urine sample is specific and is based on scientific evidence. Parkinson's and Young's non-hearsay testimony cannot be evidence of a fact that requires scientific precision. Based on the evidence produced, we do not know whether the sample was an invalid flushed sample. The testimony of the testing officer was essential to any such finding.

Second, it is doubtful that Parkinson's drinking "a lot" of water contrary to the instructions of his probation officers where the medical necessity to drink a lot of water to ameliorate the symptoms of his diabetes caused him to do so constitutes a violation of his supervised release conditions. Third, Parkinson denied that he was using drugs. It would seem that this alone would preclude a finding of harm-

lessness. The protocol specified in the government's own manual calls for retesting in these circumstances. *Martin*, 984 F.2d at 312. That re-testing did not occur here.

The failure to undertake the required *Morrissey* balancing, employing the factors considered in *Martin*, violated Parkinson's due process rights. This violation was harmful. First, given the highly doubtful nature of the conclusion that drinking a lot of water for medical reasons violates a condition of supervised release, the results of the urine test (was his sample, in fact, flushed?) were critical to any justification to revoke Parkinson's supervised release. Second, because the results of the test were important to the court's ultimate finding, Parkinson had a strong interest in refuting those test results and had no opportunity to do so because Coleton, the testing officer, did not testify. Third, as to the consequences of the test results, they were important to the revocation. Young could not testify to the chain of possession of the urine sample nor its actual testing. "[T]he importance of the test results and the denial of any meaningful opportunity to impeach the results would suffice to conclude that [releasee's] right to confrontation was substantial." *Martin*, 984 F.2d at 312.

On the other side of the *Morrissey* scale, the government has offered nothing to support its interest in denying Parkinson's right to confrontation. The government has advanced no reason for failing to produce Coleton. In summary, Parkinson's due process rights were violated and the violation was harmful. The government should have produced Coleton for cross examination; the district court should have sustained Parkinson's hearsay objection and should have required confrontation. Without it, the court should have declined

to find a violation of Parkinson's conditions of parole.