IN THE SUPREME COURT OF THE STATE OF NEVADA

GABRIAL WILLIAMS, A/K/A GABRIEL
EARL WILLIAMS,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 74520

FILED

JUL 0 1 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

*ORDER OF AFFIRMANCE*

A jury convicted Gabrial Williams on fifteen counts for crimes related to the abuse and attempted murder of his wife, E. Eighth Judicial District Court, Clark County; Douglas W. Herndon, Judge. This court upholds those convictions, for the reasons that follow.

First, Williams argues that the district court erred by denying his pretrial motion to dismiss as an untimely pretrial petition for a writ of habeas corpus. *See* NRS 34.700(1)(a) (requiring a petition to be "filed within 21 days after the first appearance of the accused in the district court"). Generally, we review a district court decision to dismiss a pre-trial writ for an abuse of discretion, *Rugamas v. Eighth Judicial Dist. Court*, 129 Nev. 424, 436, 305 P.3d 887, 896 (2013), but the proper application of NRS 34.700 is a question of law that we review de novo. *State v. Catanio*, 120 Nev. 1030, 1033, 102 P.3d 588, 590 (2004). Because the motion argued that his indictment would have failed absent the State's introduction of inadmissible and improper evidence, that motion was, at its core, a challenge to the grand jury's probable cause determination. Thus, it was a "motion to dismiss" in name only, as any pretrial motion challenging the district court's probable

19-28135

cause determination must be brought under NRS 34.700 as a pretrial habeas petition. *See Rugamas*, 129 Nev. at 435-36, 305 P.3d at 895-96 (discussing grand jury evidentiary issues within the context of a pretrial habeas petition). And because Williams's filing was made several weeks after the deadline to petition for such relief under NRS 34.700 and EDCR 3.40(e), the district court did not err by denying the same.[1]

Second, Williams argues that the district court abused its discretion by denying his post-trial motion to dismiss, which he filed after his trial and conviction on all counts, and in which he raised, for the first time, statute of limitation defenses to certain charges. But statute of limitation defenses "are non-jurisdictional, affirmative defenses" that are waived if not timely asserted to the trial court. *Hubbard v. State*, 112 Nev. 946, 948, 920 P.2d 991, 992 (1996). Accordingly, Williams's failure to timely raise the statute of limitations in the trial court waived the defense, and the district court did not abuse its discretion by rejecting the post-trial motion to dismiss. *See id.* at 948, 920 P.2d at 993.[2]

Third, Williams argues (for the first time on appeal) that the State engaged in prosecutorial misconduct to the extent it elicited testimony from three expert witnesses describing the gunshot wound to the back of E.'s head as consistent with "a kill shot," "an assassination," or "execution-style." We review the district court's assessment of the alleged misconduct

---

[1]Because the writ petition was untimely filed, this court declines to consider the substance of the arguments raised on appeal. *See Sheriff v. Chumphol*, 95 Nev. 818, 818, 603 P.2d 690, 691 (1979) (holding pretrial petitions not in compliance with statutory requirements are "not cognizable").

[2]This court declines to consider the merits of the waived defense.

for plain error, and find none. *Valdez v. State*, 124 Nev. 1172, 1191, 196 P.3d 465, 478 (2008) (stating that an accurate description of the facts of a case is not inflammatory); *Dawson v. State*, 84 Nev. 260, 261, 439 P.2d 472, 473 (1968) ("An expert witness may state conclusions on matters within his expert knowledge provided the conclusion is one laymen would not be capable of drawing for themselves."); *see also State v. Warmus*, 967 N.E.2d 1223, 1234 (Ohio Ct. App. 2011) (finding that a gunshot wound to the back of the head, fired at close proximity was accurately described as "an execution-style shooting"). And even assuming that the State improperly elicited these conclusions, there is nothing to support that such accurate descriptions of the victim's wound amounted to constitutional violations or unduly influenced the jury so as to render the verdict reversible. *See Valdez*, 124 Nev. at 1189, 196 P.3d at 476.

Fourth, Williams argues that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to turn over video footage of the prosecutor interviewing various witnesses related to his case, filmed by producers of a true crime procedural drama focused on the Clark County District Attorney's Office. We review the question of whether the State satisfied *Brady* de novo. *Mazzan v. Warden*, 116 Nev. 48, 66, 993 P.2d 25, 36 (2000). But Williams offers no details as to what sort of exculpatory evidence he expects the footage in question to show, nor does the record include the district court's order regarding his motion. Instead, Williams merely indicates on appeal that he required "additional discovery" from the State. But, "the State is under no obligation to accommodate a defendant's desire to flail about in a fishing expedition." *Sonner v. State*, 112 Nev. 1328, 1340, 930 P.2d 707, 715 (1996), *modified on rehearing on other grounds by* 114 Nev. 321, 955 P.2d 673 (1998). To the contrary, "[a] defendant's right

 

to discover exculpatory evidence does not include the unsupervised authority to search through the [State's] files." *Jaeger v. State*, 113 Nev. 1275, 1281, 948 P.2d 1185, 1188 (1997) (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987)). Thus, there is nothing substantiating a *Brady* violation on these facts.

Fifth, Williams argues—citing a string of professional conduct violations without analysis—that the district attorney's office had a proprietary interest in the outcome of his case because Clark County was paid $7,500 per episode of the procedural drama noted above. According to Williams, the district court therefore erred by denying his motion to disqualify the entire office. But without the benefit of argument as to why or how the rules he cites apply, much less why the supposed violations of those rules would warrant disqualification of each and every prosecutor in the Clark County District Attorney's Office, this court cannot evaluate the substance of his argument. *See Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987). And in any case, we do not view this as a showing of such extreme circumstances that we would reverse the district court's exercise of its sound discretion. *Rippo v. State*, 113 Nev. 1239, 1255-56, 946 P.2d 1017, 1027-28 (1997).

Sixth, Williams argues that there was insufficient evidence to convict him. Evaluating "the evidence in the light most favorable to the prosecution," *Rimer v. State*, 131 Nev. 307, 324, 351 P.3d 697, 710 (2015), this court cannot agree. In addition to E.'s pretrial statements and testimony that her husband abused her and instructed his codefendant to shoot her, the State introduced a wide array of evidence supporting its theory of the crime, including the following: physical evidence from the crime scene establishing that E.'s wound was not self-inflicted; video

SUPREME COURT
OF
NEVADA

(O) 1947A

4

evidence from the hospital, showing Williams and his codefendant delivering E. to the emergency room; testimony establishing that Williams and his codefendant gave conflicting stories as to the origin of E.'s wound to emergency room staff; video evidence and receipts from the store where Williams bought burner phones to evade police after the shooting; testimony from Williams's codefendant that Williams had attempted to clean up the crime scene and purchased burner phones to evade capture by the police; testimony from homicide detectives that two gunshots were fired in Williams's home, and that a trigger guard from a .22 caliber gun with Williams's fingerprints on it was also recovered there; and circumstantial evidence supporting that Williams had attempted to clean up the crime scene, including the discovery of cleaning supplies near the blood stains, and a carpet cleaner filled with bloody water. In light of this evidence, "a 'rational trier of fact could have found the essential elements of the crime[s] beyond a reasonable doubt.'" *Id.* at 324, 351 P.3d at 710 (alteration in original) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

Finally, Williams argues that he was entitled to a new trial, or alternatively an evidentiary hearing, based on certain post-trial statements made by E. We review the district court's decision to deny a new trial for an abuse of discretion. *State v. Carroll*, 109 Nev. 975, 977, 860 P.2d 179, 180 (1993). Specifically, E. recanted portions of her testimony, indicated that she no longer remembered Williams instructing his codefendant to shoot her, and instead only recalled "tussling" with him near a gun she kept on the nightstand. But the district court did not abuse its discretion in denying Williams's motion for a new trial. Before her recantation, E. repeatedly stated that she remembered her husband directing his codefendant to shoot her, and the evidence supporting her account makes it

SUPREME COURT
OF
NEVADA

(O) 1947A

5

unlikely that her testimony was falsified, or that her post hoc statements would have changed the trial's outcome. *See Callier v. Warden*, 111 Nev. 976, 990, 901 P.2d 619, 627-28 (1995) (establishing the test for evaluating the effect of witness recantation as whether "(1) the court is satisfied that the trial testimony of material witnesses was false; (2) the evidence showing that false testimony was introduced at trial is newly discovered; (3) the evidence could not have been discovered and produced for trial even with the exercise of reasonable diligence; and (4) it is probable that had the false testimony not been admitted, a different result would have occurred at trial"). And for the same reasons, Williams is not entitled to an evidentiary hearing. *Cf. Hargrove v. State*, 100 Nev. 498, 503, 686 P.2d 222, 225 (1984) (noting that, a defendant "is not entitled to an evidentiary hearing on factual allegations belied or repelled by the record.").[3]

We therefore ORDER the judgment of conviction AFFIRMED.

_____, J.
Pickering

_____, J.
Parraguirre

_____, J.
Cadish

---

[3]To the extent Williams cogently raised any additional arguments, we find no error warranting reversal of his conviction. Also, we reject Williams's claim that cumulative error warrants reversal.

cc: Hon. Douglas W. Herndon, District Judge
Dayvid J. Figler
Law Office of Kristina Wildeveld
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A