BENITO LAWRENCE ANAYA, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 10674

January 24, 1980                              606 P.2d 156

MANOUKIAN and THOMPSON, JJ., dissented in part.

*Morgan D. Harris,* Public Defender, and *George E. Franzen,* Deputy Public Defender, Clark County, for Appellant.

*Richard Bryan,* Attorney General, Carson City; *Robert Miller,* District Attorney, and *Gary D. Weinberger,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, Mowbray, C. J.:
Appellant Benito Anaya seeks review of the district court's

order revoking his probation. Anaya contends that the district court erred both in finding that his waiver of his preliminary hearing constituted a waiver of his due process rights at the later revocation hearing and in admitting the multiple hearsay testimony of his probation officer for the purpose of establishing a substantive violation of the terms of his probation. We agree and therefore reverse and remand to the district court for a new revocation hearing.

In July, 1977, Anaya was placed on probation for a term not to exceed five years. In addition to other conditions of probation, he was ordered to enter and complete a drug treatment program approved by the Department of Parole and Probation, to maintain a blood alcohol level of below .10, and to submit to search by any probation officer on request. Appellant was then placed by the Treatment Alternative to Street Crime (TASC) program in an approved Veterans Administration drug rehabilitation center in Brentwood, California. Appellant later requested permission of his counselor to return to Las Vegas to seek another program. He returned to Las Vegas and reported to TASC, which placed him in a rehabilitation program at Fitzsimmons House in Las Vegas. He reported to the probation department, registered as an ex-felon, and reported to probation officials that he had obtained a job. On November 7, 1977, appellant was arrested by North Las Vegas police for driving under the influence, a violation of NRS 484.379. The State moved to revoke Anaya's probation, alleging violations of his probation with respect to intoxicants, failure to cooperate with probation authorities, failure to conform his conduct to the law, and failure to complete a drug rehabilitation program.

A probation revocation hearing was held on January 24, 1978. The State's principal witness was appellant's probation officer, David Hill, who testified that appellant had waived his right to a preliminary inquiry, under NRS 176.216. He further testified that, according to an arrest report, appellant's blood alcohol level at the time of his arrest on November 7 was .220. The arrest report referred to by Hill was not entered into evidence; nor were the arresting officers called to testify by the State, although they had been present on previous occasions when the revocation hearing had been continued. In response to Anaya's constitutional and statutory objections to Hill's testimony, the district court ruled that the confrontation rights granted by NRS 176.217(2)(d) and by the United States Constitution had been waived by appellant when the preliminary inquiry was waived. At the close of the hearing, appellant's probation was revoked, and this appeal was taken.

Parole and probation revocations are not criminal prosecutions; the full panoply of constitutional protections afforded a criminal defendant does not apply. *See* Gagnon v. Scarpelli, 411 U.S. 778 (1973); Morrissey v. Brewer, 408 U.S. 471 (1972). Revocation proceedings, however, may very well result in a loss of liberty, thereby triggering the flexible but fundamental protections of the due process clause of the Fourteenth Amendment. *Id.* Due process requires, at a minimum, that a revocation be based upon "verified facts" so that "the exercise of discretion will be informed by an accurate knowledge of the [probationer's] behavior." *Morrissey,* 408 U.S. at 484.

In order to insure that this constitutional standard is achieved and to offer guidance to the states in structuring their respective revocation procedures, the United States Supreme Court, in *Morrissey* and *Gagnon,* outlined the minimal procedures necessary to revoke probation or parole. A preliminary inquiry, to determine whether there is probable cause to believe that the probationer violated the conditions of his or her probation, is required, at which the probationer must be given notice of the alleged probation violations, an opportunity to appear and speak on his own behalf and to bring in relevant information, an opportunity to question persons giving adverse information, and written findings by the hearing officer, who must be "someone not directly involved in the case." *Morrissey,* 408 U.S. at 485–87. If probable cause is found, the probationer is entitled to a formal revocation hearing, less summary than the preliminary inquiry, at which the same rights attach, *Gagnon,* 411 U.S. at 786, before a "neutral and detached" hearing body, *Morrissey,* 408 U.S. at 489. The function of the final hearing is to determine not only whether the alleged violations actually occurred, but whether "the facts as determined warrant revocation." *Id.* at 480, 488; *see Gagnon,* 411 U.S. at 790.

These constitutional standards have been codified, in part, in Nevada. *See* NRS 176.216–.218. NRS 176.217(2)(d) provides that-at the preliminary inquiry a probationer shall be allowed to "[c]onfront and question any person who has given adverse information on which a revocation of his probation may be based, unless in the opinion of the inquiring officer the person would be subjected to a risk of harm by disclosure of his identity." The statute is silent, however, as to the standards applicable to the final revocation hearing, which is held before a district judge. NRS 176.221. As noted above, *Morrissey* and

*Gagnon* mandate that the due process protections available at the preliminary hearing apply to the less summary final revocation hearing with equal, if not greater, force. We therefore hold that a probationer has a due process right to confront and question witnesses giving adverse information at the formal revocation hearing which is not foreclosed by negative inference from NRS 176.217 which grants this right at the preliminary inquiry. *Cf.* Milchem, Inc. v. District Court, 84 Nev. 541, 549, 445 P.2d 148, 153 (1968) (this Court will construe statutes to avoid unconstitutionality whenever possible). In the instant case, the district court determined that, by waiving his right to a preliminary inquiry, appellant had also waived his due process confrontation rights at the final hearing. Since the record does not demonstrate that appellant knowingly and intelligently waived a known right, the district court erred in concluding otherwise. *See* Johnson v. Zerbst, 304 U.S. 458 (1938).

Having found that appellant had a due process right to confront and question witnesses giving information against him, we must determine whether the use of the probation officer's multiple hearsay testimony for the purpose of establishing a substantive violation of probation conditions violated that right. The process due a probationer is determined by balancing the strength of the probationer's interest in confronting and cross-examining the primary sources of the information being used against him against the very practical difficulty of securing the live testimony of actual witnesses to his alleged violation or to his character while on probation. An important factor in this balancing is the purpose for which the information is offered. If evidence is presented, as in the instant case, to establish a substantive violation of a probation condition, the probationer's interest in questioning the actual source of the information, and thus testing its reliability, is far stronger than if the information relates merely to his general character while on probation. Similarly, the form of the information is important in striking the due process balance: not every use, of course, of hearsay evidence which is reliable runs afoul of the due process clause. *See, e.g.,* United States v. Pattman, 535 F.2d 1062 (8th Cir. 1976); United States v. Miller, 514 F.2d 41 (9th Cir. 1975).

Thus, if an arrest report were introduced, we see no difficulty in considering it as *prima facie* evidence of the facts it contains. When the accuracy of the facts alleged is challenged

by the probationer, however, the presumptive reliability of the report when used to establish facts constituting a probation violation becomes more questionable.[1] On the other hand, in the more discretionary phase of a revocation proceeding, determining whether revocation is appropriate, a probationer is permitted to introduce evidence, such as "letters, affidavits, and other material that would not be admissible in an adversary criminal trial." *Morrissey,* 408 U.S. at 489. We consider this to mean that the procedure due must be flexible enough to allow the probationer to show mitigating circumstances and the prosecutor to show aggravating circumstances with respect to a violation which has been previously established in order to aid the court in determining an appropriate rehabilitative or punitive response to a proven violation. If the probationer wishes to introduce hearsay evidence of his good character while on probation, for example, no purpose would be served by declining to admit it.

In applying these standards to the instant case, we note that the challenged testimony was offered into evidence to establish appellant's substantive violation of the conditions of his probation, thus directly implicating appellant's constitutionally protected liberty interest. The probation officer testified extensively as to the circumstances of appellant's arrest for drunk driving: the probation officer was allowed to testify that appellant's blood alcohol level was .220 at the time of the arrest and as to other details of the arrest. The probation officer's testimony, summarizing the contents of an arrest report, was multiple hearsay: predicated purely upon a recital of what the report said that the arresting officers had observed. Despite the problems of reliability raised by this testimony, the arrest report was

---

[1] In *Miller,* cited above, unauthenticated photostatic copies of court records of a probationer's subsequent convictions were admitted at a revocation hearing. The court noted that the accuracy and reliability of the copies were not challenged, but, while holding that no due process violation had occurred, the court disapproved the prosecution's reliance upon such secondary evidence when more reliable evidence, the testimony of the arresting officers, was readily available. 514 F.2d at 43. We observe that on the issue of whether a probation violation has occurred, a court record of a conviction is presumptively far more reliable than an arrest report, which does not involve an adjudication of guilt beyond a reasonable doubt. Similarly, in *Pattman,* cited above, a probation officer read from an arrest report which named and described the probationer. The probation violation for which revocation was sought, however, was failure to report an arrest, not for the substantive offense charged in the report; and the court considered it for the purpose of showing an arrest. With respect to the issue of whether an arrest had occurred, the report was a highly reliable piece of evidence; thus no due process violation was found.

not introduced into evidence; the arresting officers did not testify at the hearing; nor does the record contain any explanation for their absence. Moreover, there is no indication in the record that either the probation officer or the probationer even had a copy of the report. Neither the district court, the probationer, nor this Court on review could have any means of testing the accuracy or reliability of the facts recited in the report itself or of the probation officer's recollection of them. Under these circumstances, where the probationer's liberty interest is substantial and the State's interest in admitting such multiple hearsay testimony rather than more reliable evidence is slight,[2] we must conclude that the probationer's due process right to confront and question his accusers was violated.

In conclusion, we hold that the admissibility of evidence at a probation revocation hearing is to be governed by a due process balancing standard. In reaching an appropriate determination, the trial court must exercise its sound discretion after carefully considering the respective interests of the probationer and the State, the purpose for which the evidence is offered, and the nature and quality of that evidence. Under the standard announced today, following *Morrissey, Gagnon,* and NRS 176.217(2), we conclude that appellant was denied his due process right to a fair revocation hearing. Accordingly, we reverse the order of the district court revoking appellant's probation and remand the cause for a new revocation hearing.

GUNDERSON and BATJER, JJ., concur.

MANOUKIAN, J., with whom THOMPSON, J., joins, concurring in part and dissenting in part:

In the instant case, Benito Anaya appeals from revocation of his probation contending that the admission of hearsay evidence violated his right to confrontation and that the trial court abused its discretion in revoking his probation. Although I concur in that part of the majority opinion which holds that the trial court erred when it ruled that Anaya had waived his sixth

---

[2]Problems posed by the necessity of securing direct testimony from distant areas may be alleviated by the holding of the preliminary inquiry as closely as possible in time and place to the alleged violation. *Morrissey,* 408 U.S. at 485. When the probationer's right to cross-examine those providing adverse information is scrupulously observed at this inquiry and an appropriate record is made, we perceive little difficulty in using that record at the formal revocation hearing, when securing the live testimony of witnesses to the violation would be burdensome. In any case, the practicality of obtaining this most reliable primary evidence is one of the factors to be taken into account by the district court when it strikes the due process balance on the propriety of admitting offered evidence of a secondary character.

amendment confrontation right, I disagree that the error is reversible within the context of this case.

The effect of the majority opinion is two-fold. First, irrespective of the existence of good cause, as here, for a probation revocation, the State of Nevada will be compelled in any number of cases to expend great cost and energy to produce witnesses from foreign jurisdictions for confrontation by the probationer. Second, the long-standing practice of our trial courts in effectively conducting probation revocation proceedings within the parameters of justice and fair play will be hampered by heretofore unsupportable defense objections, petitions to this court for pre-revocation hearing review, motions to preclude testimony or introduction of physical or documentary evidence, and the like. The limits the majority places on the prosecution and trial bench today constitute an undue interference with probationary processes. By doing so, his court perverts our previous constitutional guarantees and frustrates the vital interests of society in preserving the legitimate and proper function of fair and purposeful probationary procedures.

There are several significant facts to this case which my brethren fail to point out. After appellant was placed in the California drug rehabilitation center as a condition of his probation, he left the center and returned to Las Vegas to seek another program. He said he was dissatisfied with the rigorous conditions existent at the first facility. Appellant was then placed by TASC at Fitzsimmons House. Mr. David Hill was appellant's original supervising probation officer. Appellant was to report to Hill and was so advised by TASC and Fitzsimmons House. Appellant failed to report to Hill until after November 7, 1977. On that day he was arrested by North Las Vegas police for driving under the influence. Hill testified that appellant's blood alcohol content was .220 at the time of arrest. Hill had obtained this information from the arrest report.

At the revocation hearing, Hill testified as to the circumstances surrounding appellant's departure from the California drug program and the circumstances surrounding his arrest for driving under the influence. Appellant unsuccessfully objected to this testimony on the basis of hearsay and a violation of his right to confront witnesses.[1] The second witness, a representative from the TASC agency, was called by appellant. He testified that appellant did not complete any drug program.

---

[1]At this point, the trial judge made his ruling that appellant's waiver of his preliminary hearing constituted a waiver of his due process rights at the subsequent revocation hearing. I agree with the majority's holding that this constituted error, although I do not agree that it necessitates reversal. The right to

Appellant testified that he had left the program in California, hoping to enroll in a different program in Las Vegas. He also stated that he did not contact Hill because he thought someone else was his probation officer. At the conclusion of the hearing, appellant's probation was revoked.

As the majority recognizes, there is no express statutory provision for the revocation hearing. Not unlike the majority, I do not believe that the legislature would confer this unqualified right upon a probationer at the preliminary inquiry and deny it at the more formal and plenary revocation hearing. Statutes will be construed as to avoid unreasonable results. Western Pacific R.R. v State, 69 Nev. 66, 69, 241 P.2d 846, 847 (1952); Penrose v. Whitacre, 61 Nev. 440, 455, 132 P.2d 609, 616 (1942).

From a constitutional standpoint, and in a right to counsel context, the United States Supreme Court has held that probationers and parolees are entitled to a preliminary and a final revocation hearing to satisfy due process. Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973), *citing* Morrissey v. Brewer, 408 U.S. 471 (1972). Although these cases hold that the right to confront and cross-examine adverse witnesses is applicable to such hearings, the Supreme Court did state that these hearings are not part of a criminal prosecution and "the full panoply of rights" in such instances does not apply. Morrissey v. Brewer, 408 U.S. at 480; United States v. Strada, 503 F.2d 1081, 1085 (8th Cir. 1974). In *Gagnon* and *Morrissey,* the Supreme Court emphasized that such proceedings may be conducted under less stringent evidentiary rules, stating in *Morrissey,* "[t]he process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." Morrissey v. Brewer, 408 U.S. at 489; *accord,* Gagnon v. Scarpelli, 411 U.S. at 782–83 n.5. The question here is whether the curtailment of the right to confrontation in the instant case transcended reasonable limits in

confront witnesses does apply at the less summary judicial hearing and not just at the preliminary inquiry. United States v. Pattman, 535 F.2d 1062, 1063–64 (8th Cir. 1976), *citing* Gagnon v. Scarpelli, 411 U.S. 778 (1973). This is because the inquiry is conducted by a non-judicial officer while, at the hearing, the court must make rulings on admissibility and weigh the evidence to determine whether the revocation is warranted. Additionally, because of the time lapse between the arrest and the eventual probable cause determination by the non-judicial officer, arrestees may be induced to waive the preliminary inquiry from the standpoint of personal expediency. To hold that a waiver of a preliminary inquiry operates as a total deprivation of a right to confrontation would greatly impair the main objective of the adversary process—specifically, society's interest in having probation revoked based only upon reliable information and upon proper evaluation of the need to revoke probation in light of probation conditions. Morrissey v. Brewer, 408 U.S. 471, 488 (1972).

view of a probationer's conditional right to confront and cross-examine adverse witnesses. *See* Gagnon v. Scarpelli, 411 U.S. at 786. In the context of this case, I disagree with the majority's holding that it did.

I believe that in a probation revocation proceeding our courts, as has historically been the case, can generally hear and consider hearsay evidence if it appears to be reasonably reliable; the probationer is permitted as here, to cross-examine thoroughly the witness presenting the hearsay evidence; and, the probationer, as here, is allowed to present evidence to refute the hearsay evidence. Generally, courts have allowed the use of hearsay evidence and have found no violation of the confrontation right when there is an indication that the hearsay is reliable. United States v. Pattman, 535 F.2d 1062, 1064 (8th Cir. 1976) (probation officer read from a police report which was accurate on its face as to probationer's name and description); United States v. Miller, 514 F.2d 41, 42–43 (9th Cir. 1975) (probation officer's testimony appeared reliable and was not refuted). In Arizona, probation can be revoked exclusively on hearsay testimony, as long as that hearsay is reliable. State v. Valenzuela, 567 P.2d 1190, 1192 (Ariz. 1977); Ariz. Rev. Stats., Rules of Crim. Pro. 27.7(b)(3) (West Supp. 1978–79). *See* State v. Brown, 532 P.2d 167, 172–73 (Ariz.App. 1975) (probation officer's testimony from hospital report as to probationer's urine content was found reliable). A Washington court has found no violation of due process when alleged hearsay testimony and exhibits were not exclusively relied upon to establish the central issue. State v. Smith, 539 P.2d 101, 103 (Wash.App. 1975).

Moreover, NRS 51.075(1) provides, "A statement is not excluded by the hearsay rule if its nature and the special circumstances under which it was made offer assurances of accuracy not likely to be enhanced by calling the declarant as a witness, even though he is available." Finally, our evidence code exempts revocation proceedings from its general application. NRS 47.020(3)(c). I find that the testimony in question carried with it the indicia of reliability contemplated by statute.

The clear trend is that hearsay should be reliable or accompanied by other evidence. This standard was met in the present case. Here, the probation officer testified that appellant had been arrested for driving under the influence and that appellant had, without the required permission, absented himself from the Brentwood program. From the record, I observe that appellant was not unduly limited in the exercise of his rights. Appellant did cross-examine the officer as to his knowledge of

the arrest and breathalizer test as well as his indirect knowledge of the circumstances under which appellant left Brentwood. Appellant did not, however, actually refute the fact that he was arrested or what the results of the breathalizer were. *Cf.* McNallen v. State, 91 Nev. 592, 540 P.2d 121 (1975) (appellant did not contest fact that he was arrested for possession of controlled substance); State v. Smith, 539 P.2d 101 (Wash.App. 1975) (appellant did not materially deny hearsay allegations). Appellant was also allowed to call his own witnesses. I would hold that the court did not err in admitting the hearsay evidence.

Appellant has also contended that the only evidence the lower court heard and considered in revoking appellant's probation was hearsay and that this was erroneous. I believe this contention is also without merit. We have held that in order to revoke probation the judge must be reasonably satisfied by the evidence and facts "that the conduct of the probationer has not been as good as required by the conditions of probation." Lewis v. state, 90 Nev. 436, 438, 529 P.2d 796, 797 (1974). *See also* United States v. D'Amato, 429 F.2d 1284 (3d Cir. 1970).

I note that appellant was also accused of failing to cooperate with his probation officer. In this connection, nonhearsay evidence presented below was by itself sufficient to justify revocation. Hill testified that he was the original probation officer assigned to appellant and that appellant failed to report to him. Additionally, a witness for the defense testified on cross-examination that appellant failed to complete the program at Brentwood. Appellant himself testified that he left Brentwood against the recommendation of its administrators. And, he did not challenge the accuracy of the information that he had been intoxicated at the time of his arreest and he offered no evidence to refute the material allegations of the motion for revocation. I believe that the unrefuted testimony elicited at the hearing was sufficiently reliable and adequate to satisfy the trial court that appellant had violated the terms of his probation. Appellant suggested no reasonable excuse for the violations or a convincing reason as to why revocation was inappropriate.[2] It is

---

[2]As acknowledged by the majority, I feel constrained to mention that although a parolee or probationer is not clothed with a full range of constitutional rights, as indicated by *Gagnon* and *Morrissey,* more process may be due in certain revocation proceedings. Although I believe the evidence proffered here was admissible, it is more consonant with responsible procedural and evidentiary practice for the state to present live witnesses and authenticated records or reports when practicable to do so. In the instant case, the record shows that arresting officers could have been produced at the hearing. Had the state more readily accepted its evidentiary responsibilities, judicial economy

settled that in revocation proceedings, the trial court's exercise of its broad discretionary power will not be disturbed absent a clear showing of abuse. Lewis v. State, 90 Nev. at 438, 529 P.2d at 797.

Here, Anaya was afforded the minimal due process required by Gagnon v. Scarpelli, 411 U.S. 778 (1973). I would hold that the lower court did not abuse its discretion in revoking appellant's probation.

---

would doubtlessly have been served by the avoidance of this appeal. United States v. Miller, 514 F.2d 41, 43 (9th Cir. 1975). I caution, as has the majority generally, that when the main substantive charge is proffered through hearsay and is otherwise unsupported and materially denied, due process may well support the claimed right of confrontation. State v. Riddell, 449 P.2d 97, 99 (Wash. 1968).