948 P.2d 1185 (1997)
John JAEGER, Appellant,
v.
The STATE of Nevada, Respondent.
No. 26944.
Supreme Court of Nevada.
November 20, 1997.
*1186 Steven P. McGuire, State Public Defender and Timothy P. O'Toole, Deputy Public Defender, Carson City, for Appellant.
Frankie Sue Del Papa, Attorney General, Noel S. Waters, District Attorney, and Roy L. Stralla, Deputy District Attorney, Carson City, for Respondent.

OPINION
YOUNG, Justice.
Appellant John Jaeger was convicted of grand larceny, given a seven year suspended prison sentence, and placed on probation for a period not to exceed five years. A probation revocation hearing was conducted after Jaeger allegedly tested positive for methamphetamine usage, and Jaeger's probation was revoked. Jaeger argues that the district court erred by quashing his subpoena prior to the hearing, by not requiring the prosecution to call as witnesses the people who conducted the laboratory analysis of his urine samples, and by considering his community service obligations when deciding to revoke his probation.
We conclude that Jaeger's arguments lack merit, and we therefore affirm the district court's order.

FACTS
On March 1, 1990, Jaeger took his paycheck to the Carson Station Casino after he got off work. While at the Carson Station Casino, he got drunk and gambled away his entire paycheck. Jaeger was ashamed to go home to his wife and children with no money, so he stole the purse of an eighty-five-year-old woman, knocking her down in the process. Jaeger was arrested that night and shortly thereafter admitted to committing the crime.
On April 17, 1990, Jaeger pleaded guilty to one count of grand larceny. Because of Jaeger's lack of a prior criminal record, supportive family environment, and desire to remain sober, the Department of Parole and Probation recommended probation. On May 22, 1990, the trial judge sentenced Jaeger to a term of seven years in prison, suspended that sentence, and placed Jaeger on probation for a period not to exceed five years. As a condition of probation, Jaeger agreed to submit to random, warrantless searches by Parole and Probation officers for the presence of alcohol, and this condition included chemical testing. Additionally, Jaeger agreed to serve 300 hours of community service, submit to substance abuse evaluation, and if necessary, submit to substance abuse counseling.
On November 28, 1990, the Department of Parole and Probation filed an incident report concerning Jaeger. The report stated that in late November 1990 Jaeger had twice been seen by a sheriff's detective consuming alcohol in a bar. The report also stated that an officer of the Department of Parole and Probation had seen Jaeger drinking alcohol once in August 1990 and once in October 1990. No action was taken against Jaeger.
On October 2, 1991, the Department of Parole and Probation filed a probation violation report. The report indicated that Jaeger had been arrested for a DUI on September 30, 1991, after his breath test showed a.18 percent blood alcohol content. The report also indicated that since being placed on probation, Jaeger had repeatedly failed to follow the conditions of his probation in that he had completed only forty hours of community service in seventeen months and had not attended counseling. On November 14, 1991, *1187 a probation revocation hearing was held. After admitting to all the probation violations, Jaeger was placed on house arrest for ninety days, and his probation was reinstated.
On February 16, 1994, the Department of Parole and Probation filed a second probation violation report. The report stated the following allegations: (1) on January 17, 1994, Jaeger was arrested on one count of being an ex-felon in possession of a firearm, but that case was dismissed; (2) on January 27, 1994, Jaeger had taken a urine test and tested positive for methamphetamine; (3) Jaeger had been in the company of a person with a known criminal record; and (4) Jaeger had continually failed to perform his community service work. Based on this report, on February 17, 1994, a bench warrant was issued for Jaeger's arrest. On February 25, 1994, Jaeger was arrested. A probation revocation hearing was set for March 22, 1994.
Sometime between Jaeger's arrest and the probation revocation hearing, Parole and Probation officers and Tri-Net officers conducted a search of Jaeger's home. Julie Jaeger, Jaeger's wife, testified as follows regarding the search. She was sleeping on the couch when the officers came through the door. A female Parole and Probation officer performed a full strip/body cavity search on her. The officers took the three children, ages five, four, and one, and attempted to search them, but the children were taken by a neighbor before the police could perform the search. The search yielded a small amount of marijuana. Mrs. Jaeger was arrested for possession of marijuana; however the charges were later dismissed. The Jaegers filed a complaint with the Department of Motor Vehicles, Internal Affairs Unit concerning the search, and an investigation ensued. Jaeger was unsuccessful in his various attempts to obtain the results of that investigation.
On March 22, 1994, a hearing was held regarding the second probation violation report. Jaeger admitted to the charges in the report. He also stated that he had completed 136 hours of his community service obligation. At the conclusion of the hearing, the judge reinstated Jaeger's probation, added extensive supervision requirements, and ordered Jaeger to work toward completing his community service requirements whenever he was not otherwise employed.
On January 5, 1995, the Department of Parole and Probation filed a third probation violation report. The report stated that on December 4, 1994, Jaeger had been arrested for child endangerment after leaving his five-year-old son unattended in a car for approximately one and one-half to two hours with a razor knife on the seat and a "dagger" stuck into the dashboard. Jaeger also had failed to pay traffic fines for driving on a suspended license and had refused to comply with a court ordered substance abuse counseling program. Additionally, the report stated that Jaeger tested positive for methamphetamine on December 22 and 29, 1994. This time Jaeger denied the allegations, and a third revocation hearing was set.
Prior to the revocation hearing, Jaeger subpoenaed Investigator Dan Luke ("Luke") of the Department of Motor Vehicles and Public Safety, Internal Affairs Unit, requesting production of the case file concerning the search of the Jaegers' house, including the final investigation report. According to Jaeger, the file was necessary to prove his defense theory that the Department of Parole and Probation had fabricated the December drug test results in retaliation for Jaeger's attempts to expose the criticism of the Parole and Probation employees presumably contained in the investigation report. The prosecutor filed a motion to quash the subpoena based on the fact that producing such information would be unreasonably burdensome and also that the information was confidential. The judge granted the motion to quash, stating that the investigation report was not relevant to the issue of whether Jaeger tested positive for drug use.
At the revocation hearing commenced on March 10, 1995, Laura Alvarez, Jaeger's probation officer, provided the bulk of the testimony against Jaeger. She testified that Jaeger had tested positive for methamphetamine use, and Jaeger objected to this testimony on the grounds that Alvarez had no personal knowledge of the actual testing procedures employed by the laboratory technicians, could testify only as to the drug testing procedures recommended by the Department *1188 of Parole and Probation, and was merely supplying a hearsay account of the test results. Jaeger's counsel argued that permitting Alvarez to testify deprived Jaeger of the right to confront those who had conducted the drug tests. Jaeger's counsel further argued that she needed to question those who had conducted the drug tests in order to prove that the results of those tests had been fabricated. The court overruled the objections, stating that the right to confront witnesses applies in the guilt phase but does not apply to probation proceedings and that Alvarez's testimony constituted reliable hearsay.
Alvarez stated that the December 22, 1994 urine sample was tested by the Department of Parole and Probation on December 28, 1994, and that the results showed the sample tested positive for methamphetamine. She then stated that the sample was sent to an independent laboratory for confirmation, and again, the sample tested positive for methamphetamine. On December 29, 1994, the Department of Parole and Probation collected and tested another urine sample, and again, the sample tested positive for methamphetamine. Alvarez testified as to how the drug tests were normally conducted, but she did not personally conduct the drug tests at issue, was not present when the tests were conducted, and therefore could not state that the laboratory technicians followed the normal, recommended procedures. Prompted by questions from the district judge, Alvarez stated that Jaeger still needed to complete 100 hours of his community service obligation. Finally, she testified that Jaeger had failed to complete substance abuse counseling and exhibited a general lack of cooperation with regard to his probation requirements.
The district judge concluded that Jaeger violated the terms and conditions of his probation. Specifically, the district judge found that Jaeger had "test[ed] dirty for controlled substances," failed to cooperate with his Parole and Probation officer, and failed to complete his community service obligation. After making these findings, the court revoked Jaeger's probation just two months before the probationary period was scheduled to end and sentenced Jaeger to serve his entire seven year prison sentence.

DISCUSSION

The subpoena
Jaeger argues that the district court erred when it quashed his subpoena requesting the investigation report because he had a right to present a defense to the prosecution's claims, the requested documents were relevant and not privileged, and compliance with the subpoena would not have been overly burdensome. We disagree.
This court has held that "[p]arole and probation revocations are not criminal prosecutions; the full panoply of constitutional protections afforded a criminal defendant does not apply." Anaya v. State, 96 Nev. 119, 122, 606 P.2d 156, 157 (1980). While a criminal defendant has the right to subpoena documents in support of his defense, we conclude that a probationer does not enjoy the same rights.
Even in the context of a full criminal trial, a criminal defendant is only entitled to subpoena documents that are shown to be material to his or her defense. Pennsylvania v. Ritchie, 480 U.S. 39, 59, 107 S.Ct. 989, 1002, 94 L.Ed.2d 40 (1987). In Ritchie, the defendant requested disclosure of files compiled by a state child protection agency. Id. at 43, 107 S.Ct. at 994. The files related to charges of child abuse against the defendant, but were protected from disclosure by statute. Id. The defendant subpoenaed the documents, arguing that he was entitled to the information because the file "might contain names of favorable witnesses, as well as other unspecified exculpatory evidence." Id. at 45, 107 S.Ct. at 995. The lower court denied the disclosure. Id. The defendant appealed, arguing the denial violated his Sixth Amendment right to confrontation through the Fifth Amendment right to due process. Id. at 46, 107 S.Ct. at 995. The Supreme Court held that "the ability to question adverse witnesses... does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony." Id. at 53, 107 S.Ct. at 999. The Court also held that a "defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the [state's] files." Id. at 59, 107 S.Ct. at 1002. Further, "[u]nless *1189 defense counsel becomes aware that ... exculpatory evidence was withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final. Defense counsel has no constitutional right to conduct his own search of the State's files to argue relevance." Id. (Emphasis added.)
Here, Jaeger has made no showing of materiality. Like the defendant in Ritchie, he asserts only that the information contained in the investigation report might be helpful to his "conspiracy theory" defense. The dissent reasons that the mere possibility that these documents "might have proven that theory" is sufficient to require disclosure. We disagree. The holding in Ritchie is clear: Due process does not require the disclosure of state files on the mere assertion that those files might be helpful to a defendant's case. See Ritchie at 53, 107 S.Ct. at 999. Therefore, we conclude the district court properly quashed Jaeger's subpoena.
Furthermore, we conclude that the investigation report was not relevant to the issue of whether Jaeger tested positive for drug use. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." NRS 48.015. The contents of the investigation report have no bearing on whether Jaeger tested positive for drug use, and therefore, the district court properly quashed the subpoena on the grounds that the materials it requested were irrelevant.

Cross-examination of witnesses for urinalysis evidence
Jaeger also argues that the district court erred by refusing to require the prosecution to present any firsthand evidence of how the drug tests were conducted. Jaeger argues that this is important because the second prong of his defense was to attack the accuracy of the drug tests. However, the State argues that the testimony of the witness presented against Jaeger constituted reliable, admissible hearsay and that Jaeger had the opportunity to confront and cross-examine this witness.
The main witness against Jaeger was Alvarez, who testified as to the normal procedures followed by the Department of Parole and Probation when testing a urine sample. Alvarez, however, did not personally perform the tests, and therefore Jaeger objected to the admission of Alvarez's testimony, arguing that it was hearsay and also that it denied him the right to confront witnesses against him, namely the people who actually performed the tests.
Initially, we note that the district court erred in stating that a probationer did not have the right to confront witnesses against him at a revocation hearing. This court has explicitly held that "a probationer has a due process right to confront and question witnesses giving adverse information." Anaya, 96 Nev. at 123, 606 P.2d at 158.
However, we conclude that Jaeger was not deprived of his right to confront adverse witnesses because he was able to confront and cross-examine Alvarez. Jaeger argues that Alvarez's testimony was hearsay and therefore inadmissible; however, "[a] statement is not excluded by the hearsay rule if its nature and the special circumstances under which it was made offer assurances of accuracy not likely to be enhanced by calling the declarant as a witness, even though he is available." NRS 51.075(1). We conclude that Alvarez's testimony was properly admitted because it was reliable and made under assurances of accuracy not likely to be enhanced by calling the people who actually performed the drug tests. This reliability eliminated the need to call as witnesses the laboratory technicians who analyzed Jaeger's urine samples.
The dissent asserts that U.S. v. Martin, 984 F.2d 308 (9th Cir.1993) is "directly on point." However, upon closer examination, we find an important distinction. In Martin, the district court revoked the defendant's probation for several violations, but the defendant received a sentence enhancement for testing positive for a controlled substance. Id. at 309. Thus, a separate liberty interest was attached to this particular probation violation.
Here, as in Martin, Jaeger's parole was revoked for several violations, including (1) child endangerment, a gross misdemeanor; *1190 (2) failing to pay a traffic fine for driving on a suspended license; (3) refusing to comply with a court order to attend substance abuse counseling; and (4) use of methamphetamine. However, unlike the facts in Martin, the drug use did not carry with it a separate liberty interest from the other violations. Applying the United States Supreme Court holding in Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the Ninth Circuit stated, "[t]he more significant particular evidence is to a finding, the more important it is that the releasee be given an opportunity to demonstrate that the proffered evidence does not reflect `verified fact.'" Id. at 311. Thus, unlike Martin, the significance of the finding of drug use to Jaeger's ultimate revocation is substantially reduced because the ultimate resultJaeger's revocationwould have been the same for any one of the violations. Therefore, we conclude the district court did not err in refusing to compel the prosecution to call the laboratory testing officers as witnesses.

Consideration of community service
Jaeger argues that the district judge erred by considering at the revocation hearing the amount of community service that he had performed because Jaeger had not been given notice that his community service obligation would be an issue at the hearing.
The "Notice of Preliminary Hearing" form received by Jaeger on February 1, 1995, stated that he would have to appear at a revocation hearing and answer to charges of use of controlled substances, law and conduct violations (alleged child endangerment), and substance abuse evaluation violations. Jaeger was not notified that his failure to complete his community service might serve as the basis for the revocation of his probation. However, at the revocation hearing, the trial judge requested information regarding the amount of community service that Jaeger had performed. Alvarez stated that Jaeger had performed 200 hours of his community service and had 100 hours remaining.
The United States Supreme Court has stated that in regard to a probation revocation hearing, due process requires that a probationer be provided with written notice of the claimed violations of probation. Gagnon v. Scarpelli, 411 U.S. 778, 786, 93 S.Ct. 1756, 1761-62, 36 L.Ed.2d 656 (1973). In compliance with this rule, NRS 176.217(1)(c) provides that prior to the preliminary hearing, probationers facing revocation must receive advanced notice of the alleged probation violations. This court has also made it clear that due process protections available at the preliminary hearing apply at the final revocation hearing with equal or greater force. Anaya, 96 Nev. at 122-23, 606 P.2d at 158.
While Jaeger was not provided with advance notice that his community service obligation was going to be an issue at either the preliminary hearing or the final revocation hearing, we conclude that the district judge did not err in considering such information. Completing the community service obligations was part of Jaeger's probation, and the district judge had the right to question Jaeger regarding the status of his probation requirements. Therefore, we find no error in the district judge's inquiries.

CONCLUSION
We conclude that the district court properly quashed Jaeger's subpoena, properly refused to require the prosecution to call the laboratory technicians who actually performed the drug tests on Jaeger as witnesses, and properly considered the status of Jaeger's community service obligation. Therefore, we affirm the district court's revocation of Jaeger's probation.
MAUPIN, J., concurs.
SHEARING, Chief Justice, concurring:
I concur separately to address some of the statements made in the majority and dissenting opinions.
The United States Supreme Court has set forth the minimum due process requirements for probation revocation hearings in Morrissey v. Brewer, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972). These include the "opportunity to be heard in person and to present witnesses and documentary evidence" and "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." The right *1191 to present evidence is not equivalent to the right to subpoena evidence and even the right to present evidence may be limited by the evidentiary rulings of the judge.
In this case, Jaeger sought to present what was essentially a conspiracy theory, alleging that his complaints against the parole and probation officers led to retaliation against Jaeger by way of fabrication of evidence. He had no evidence to support this theory, but seems to have believed that the report of the Internal Affairs investigation of his complaint would provide some evidence. Regardless of the conclusion reached in the report, it is highly unlikely that the report would have had any relevance to Jaeger's conspiracy theory. Jaeger only alleged that the officers were biased against him. The mere fact that he filed the complaint could lead a finder of fact to believe that the officers were biased against Jaeger. The contents of the report were thus unnecessary to support a showing of this alleged bias. Therefore, I agree that the district court was correct in ruling that the report was irrelevant in the context of the revocation hearing.
However, I do not agree with the blanket statement made in the majority opinion that a probationer does not enjoy the right to subpoena documents relevant to his defense. In an appropriate case, I believe that the probationer does have the right under the guarantees of the due process clause of the Fourteenth Amendment to subpoena documents. However, the guarantees of due process do not include a right to conduct a fishing expedition. Here, the appropriate balance was realized.
Jaeger also contends that he had a right to confront the technicians who personally conducted the tests of his urine sample. The United States Supreme Court has consistently emphasized the distinction between the formal procedures and rules required in a criminal trial and the flexible, informal nature of the revocation hearing. Gagnon v. Scarpelli, 411 U.S. 778, 789, 93 S.Ct. 1756, 1763, 36 L.Ed.2d 656 (1973); Morrissey, 408 U.S. at 489, 92 S.Ct. at 2604. In the informal revocation hearing, strict adherence to the rules of evidence is not required, as long as basic due process standards are met. Morrissey, 408 U.S. at 489, 92 S.Ct. at 2604. In this case, the judge determined that the hearsay report of the test results was reliable. The judge had the discretion to make that determination. Also, Jaeger's contention was not that the testers' findings were incorrect, but rather that the officers fabricated the evidence and that the witness who testified was biased. Under this circumstance, Jaeger could test the bias of the witness adequately by cross-examination.
Jaeger contends that the district court erred by considering "violations" of which he was not given noticenamely, his failure to complete community service. This contention fails to recognize the dual nature of the district court's determination. See Morrissey, 408 U.S. at 479-480, 92 S.Ct. at 2599. First, the district court determines whether the State has proven the violations alleged. In this case, the district court found that the State had proven that the defendant had used a controlled substance. However, the inquiry does not end there. Next, the district court must exercise discretion to determine whether or not to revoke the defendant's probation. Revocation is not a necessary consequence when a violation is found. The district court should consider the seriousness of the offense, the nature of the original charge, the record of the defendant while on probation, and any other relevant factors. See id. Clearly, Jaeger's failure to fulfill the requirements of probation is relevant to the district court's determination.
For the foregoing reasons, I concur with the decision to uphold the district court's judgment.
ROSE, Justice, dissenting:
I dissent and will address the majority's arguments in the order presented.

The district court erred in quashing appellant's subpoena of government records regarding an investigation into a search of appellant's home
I believe that the district court erred in quashing Jaeger's subpoena because Jaeger had a right to present documents in support of his defense, the document was relevant and not privileged, and compliance with the *1192 subpoena would not have been overly burdensome.
Our court has stated that:
Parole and probation revocations are not criminal prosecutions; the full panoply of constitutional protections afforded a criminal defendant does not apply. See Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Revocation proceedings, however, may very well result in a loss of liberty, thereby triggering the flexible but fundamental protections of the due process clause of the Fourteenth Amendment.
Anaya v. State, 96 Nev. 119, 122, 606 P.2d 156, 157 (1980).
The United States Supreme Court has stated that few rights are more fundamental than that of the accused to present witnesses and evidence in his own defense. Taylor v. Illinois, 484 U.S. 400, 409-11, 108 S.Ct. 646, 653-54, 98 L.Ed.2d 798 (1988). The United States Supreme Court has also stated that prior to a revocation of a defendant's parole or probation, minimum due process requirements must be met which include the "opportunity to be heard in person and to present witnesses and documentary evidence." Morrissey v. Brewer, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972); see also Anaya, 96 Nev. at 122, 606 P.2d at 158. The majority's conclusion that Jaeger, as a probationer, did not have the right to subpoena documents in support of his defense violates Jaeger's constitutional right and is therefore misguided.
While a probationer has the right to present witnesses and documentary evidence, that right is not unfettered, and the accused does not have a right to present evidence that is "incompetent, privileged, or otherwise inadmissible under standard rules of evidence." Taylor, 484 U.S. at 410, 108 S.Ct. at 653. Therefore, Jaeger should have been permitted to admit the investigation report into evidence so long as it complied with the Taylor requirements.
Initially, the district court stated that the investigation report was irrelevant as to a determination of whether Jaeger tested positive for methamphetamine in December 1994 and it quashed the subpoena. However, pursuant to NRS 48.015, relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Jaeger's defense theory was that the Department of Parole and Probation falsified his drug test results in retaliation for Jaeger's filing of a complaint with Internal Affairs regarding the Department of Parole and Probation's search of his house. The fact that Chief Justice Shearing refers to this as a "conspiracy theory" in her concurrence does not minimize the fact that it is Jaeger's defense theory or that the contents of the file might have proven that theory. The contents of the investigation report are certainly relevant to Jaeger's defense because they could show that Department of Parole and Probation employees were biased against Jaeger and had a motive to fabricate the test results. See Stinnett v. State, 106 Nev. 192, 195, 789 P.2d 579, 581 (1990) (concluding that a criminal defendant's past complaints to Internal Affairs regarding the arresting officer were relevant to show that the arresting officer was biased against the defendant). Therefore, the majority's conclusion that the report was irrelevant is incorrect.
Because I conclude that the report was relevant, I also must address the State's argument that the documents were privileged pursuant to several statutes. I conclude that all of the State's arguments are unpersuasive. The State first argued that the investigation report was privileged pursuant to NRS 49.025(2) which states:
A public officer or agency to whom a return or report is required by law to be made has a privilege to refuse to disclose the return or report if the law requiring it to be made so provides.
The prosecution stated that Luke, as a member of the Internal Affairs division, was obligated by law to conduct investigations and make reports of those investigations. However, the prosecution provided no authority for this conclusion, and after reviewing the statutes and the Nevada Administrative Code provisions regarding the Department of Motor Vehicles and Public Safety, I found no support for the proposition *1193 that Luke was obligated by law to make the investigation report. Furthermore, even if authority existed to support the proposition that Luke was obligated by law to make the report, the State has failed to identify, and I have failed to find, any law which permits Luke or the State to refuse to disclose the report.
The State also argues that the investigation report was not subject to discovery pursuant to NRS 174.245(1). This statute authorizes the defendant to inspect books, papers, documents, and other objects in the possession of the prosecution, but "does not authorize the discovery or inspection of reports, memoranda or other internal state documents made by state agents in connection with the investigation or prosecution of the case." NRS 174.245(1).
NRS 174.245(1) does not protect the investigation report from discovery. In essence, NRS 174.245(1) codifies the attorney work-product doctrine by shielding from discovery all documents created in connection with the "investigation or prosecution of the case." The Internal Affairs investigation was not made in connection with Jaeger's probation revocation hearing; it was made in connection with Jaeger's complaint against the employees of the Department of Parole and Probation. While the search at issue did result in the discovery of drugs, that discovery of drugs was not at issue in the revocation hearing. Therefore, it is clear that the investigation report was not made in connection with the revocation hearing, and NRS 174.245(1) does not protect the report from discovery.
The State further argues that the investigation report is privileged pursuant to NRS 289.010, generally (the Peace Officer's Bill of Rights), and NRS 289.080, specifically. NRS 289.080(1) provides that a peace officer has a right to a lawyer or other representative during any type of internal investigatory hearing. NRS 289.080(3), the section relied upon by the prosecution, provides that any information the lawyer or representative obtains from the police officer concerning the investigation is confidential and may only be disclosed under limited circumstances. NRS 289.080(3) does not shield the investigation report from discovery because the statute is concerned with keeping confidential statements made by a peace officer to his counsel during an investigatory hearing. Jaeger's subpoena did not seek information obtained by a peace officer's counsel but instead sought the final report of the Internal Affairs investigation.
Jaeger issued the subpoena commanding Dan Luke to produce the Internal Affairs report pursuant to NRS 174.335(1)[1]. The district court may quash or modify the subpoena "if compliance would be unreasonable or oppressive." NRS 174.335(2). In its motion to quash, the prosecution argued that compliance with the subpoena would be unreasonable and oppressive but made no efforts to explain the reasons why. It appears from the record that the results of the investigation were contained in a single file, the production of which could have been easily accomplished, and further, that Investigator Luke was not required to compile any other documents or engage in any function other than producing the final investigation report. Therefore, compliance with the subpoena would not have been unreasonable or overly burdensome; and Jaeger should have been permitted to subpoena the Internal Affairs report as part of his right to present a defense.

The district court erred in refusing to compel the prosecution to call as witnesses those who performed the laboratory analysis of Jaeger's urine samples
I also feel that the majority is incorrect in its assertion that the district court properly refused to compel the prosecution to call as witnesses the parties that actually performed the laboratory analysis on Jaeger's urine samples.
First, the refusal to compel the prosecution to call as witnesses the people who conducted the drug tests on Jaeger deprived Jaeger of his right to cross-examine adverse witnesses. This court has stated:

*1194 The process due a probationer is determined by balancing the strength of the probationer's interest in confronting and cross-examining the primary sources of the information being used against him against the very practical difficulty of securing the live testimony of actual witnesses to his alleged violation or to his character while on probation. An important factor in this balancing is the purpose for which the information is offered. If evidence is presented... to establish a substantive violation of a probation condition, the probationer's interest in questioning the actual source of the information, and thus testing its reliability, is far stronger than if the information relates merely to his general character while on probation.
Anaya v. State, 96 Nev. 119, 123, 606 P.2d 156, 158 (1980).
Alvarez's hearsay testimony was offered to establish a substantive violation of a probation condition, and therefore Jaeger had a heightened interest in confronting and cross-examining the people who actually conducted the analysis of his urine sample. This need must be balanced against the difficulty of securing live testimony of actual witnesses, but in this case, one person who performed the analysis was a Department of Parole and Probation employee and the other worked for a laboratory in Reno. Thus, it appears that the prosecution could have easily secured the testimony of these witnesses.
In a similar factual context directly on point, the Ninth Circuit concluded that a releasee's due process right of confrontation was violated when the releasee was denied the opportunity to either cross-examine the laboratory personnel who conducted the urinalysis, or afforded the opportunity to independently retest his collected samples. U.S. v. Martin, 984 F.2d 308, 314 (9th Cir.1993).[2] In Martin, the district court admitted two laboratory urinalysis reports based solely on the testimony of a drug counselor who neither conducted the urinalysis nor was able to testify as to the particular test employed or general handling procedures. Id. at 312. While the court acknowledged the high degree of reliability of urinalysis laboratory results, it declined to adopt a per se rule of admissibility in all revocation hearings because urinalysis testing procedures were always susceptible to human error and, more importantly, the court concluded that such a blanket rule would render the defendant's right of confrontation irrelevant. Id. at 313.
Here, the majority's conclusion that Alvarez's testimony constituted reliable hearsay is incorrect because Alvarez had no personal knowledge regarding how the drug tests at issue were actually conducted.[3] Alvarez only testified as to the procedures normally followed by lab technicians and stated that she did not know if these lab technicians followed those procedures. Because Jaeger alleged that the lab technicians did not follow those procedures, Alvarez's testimony should have been enhanced by calling the lab technicians as witnesses. NRS 51.075(1).

The district court erred in revoking appellant's probation on the basis of an alleged violation raised sua sponte at the revocation hearing
The "Notice of Preliminary Hearing" form received by Jaeger on February 1, 1995, stated that he would have to appear at a *1195 revocation hearing and answer to charges of use of controlled substances, law and conduct violations (alleged child endangerment), and substance abuse evaluation violations. Jaeger was not notified that his failure to complete his community service might serve as the basis for the revocation of his probation.
The majority has properly stated that due process requires that a probationer be notified of the claimed probation violations prior to the revocation hearing, and it is clear in this case that Jaeger was not provided with advance notice that his community service obligation was going to be an issue at either the preliminary hearing or the final revocation hearing. Furthermore, because Jaeger's probation did not end until May 22, 1995, over two months after the revocation hearing, Jaeger could have completed his community service requirements in a timely fashion. Therefore, the majority's conclusion that it was proper for the district judge to consider the amount of community service that Jaeger had completed flies in the face of established United States Supreme Court and Nevada Supreme Court precedent cited by the majority.
For these reasons, I would reverse the district court's revocation of Jaeger's probation and remand the case for a new probation revocation hearing.
SPRINGER, J., concurs.
NOTES
[1] NRS 174.335(1) states:

[A] subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein.
[2] In attempting to distinguish U.S. v. Martin, 984 F.2d 308 (9th Cir.1993), as persuasive authority, the majority appears to argue that because Jaeger's ultimate penalty of parole revocation would have been the same for any of his parole violations, the significance of a finding of his illegal drug use, and consequently his right of confrontation in this regard, should be accorded little weight. While Jaeger did not face the prospect of a sentence enhancement for illicit drug use, the record reflects that the primary cause of Jaeger's revocation, and the ground most emphasized by the prosecution, were the urinalysis test results indicating such use. According to the court in Martin, the breadth of a parolee's right of confrontation during a revocation hearing rests on numerous factors, including the relationship between the evidence and the court's ultimate finding, the denial of any meaningful opportunity to refute such evidence, and the consequences of the court's findings. Id. at 311. Because of the significance of the urinalysis reports, along with the denial of any meaningful opportunity to challenge such evidence, I conclude that Jaeger's right of due process was violated.
[3] As such, Chief Justice Shearing's argument that Jaeger could have adequately determined the bias of the testers by cross-examining Alvarez is erroneous.