Shearing, C. J.,
concurring:
I concur separately to address some of the statements made in the majority and dissenting opinions.
The United States Supreme Court has set forth the minimum due process requirements for probation revocation hearings in Morrissey v. Brewer, 408 U.S. 471, 489 (1972). These include the “opportunity to be heard in person and to present witnesses and documentary evidence” and “the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation).” The right to present evidence is not equivalent to the right to subpoena evidence and even the right to present evidence may be limited by the evidentiary rulings of the judge.
In this case, Jaeger sought to present what was essentially a conspiracy theory, alleging that his complaints against the parole and probation officers led to retaliation against Jaeger by way of fabrication of evidence. He had no evidence to support this theory, but seems to have believed that the report of the Internal Affairs investigation of his complaint would provide some evidence. Regardless of the conclusion reached in the report, it is highly unlikely that the report would have had any relevance to Jaeger’s conspiracy theory. Jaeger only alleged that the officers were biased against him. The mere fact that he filed the complaint could lead a finder of fact to believe that the officers were biased against Jaeger. The contents of the report were thus unnecessary to support a showing of this alleged bias. Therefore, I agree that the district court was correct in ruling that the report was irrelevant in the context of the revocation hearing.
However, I do not agree with the blanket statement made in the majority opinion that a probationer does not enjoy the right to subpoena documents relevant to his defense. In an appropriate *1285 case, I believe that the probationer does have the right under the guarantee of the due process clause of the Fourteenth Amendment to subpoena documents. However, the guarantees of due process do not include a right to conduct a fishing expedition. Here, the appropriate balance was realized.
Jaeger also contends that he had a right to confront the technicians who personally conducted the tests of his urine sample. The United States Supreme Court has consistently emphasized the distinction between the formal procedures and rules required in a criminal trial and the flexible, informal nature of the revocation hearing. Gagnon v. Scarpelli, 411 U.S. 778, 789 (1973); Morrissey, 408 U.S. at 489. In the informal revocation hearing, strict adherence to the rules of evidence is not required, as long as basic due process standards are met. Morrissey, 408 U.S. at 489. In this case, the judge determined that the hearsay report of the test results was reliable. The judge had the discretion to make that determination. Also, Jaeger’s contention was not that the testers’ findings were incorrect, but rather that the officers fabricated the evidence and that the witness who testified was biased. Under this circumstance, Jaeger could test the bias of the witness adequately by cross-examination.
Jaeger contends that the district court erred by considering “violations” of which he was not given notice — namely, his failure to complete community service. This contention fails to recognize the dual nature of the district court’s determination. See Morrissey, 408 U.S. at 479-480. First, the district court determines whether the State has proven the violations alleged. In this case, the district court found that the State had proven that the defendant had used a controlled substance. However, the inquiry does not end there. Next, the district court must exercise discretion to determine whether or not to revoke the defendant’s probation. Revocation is not a necessary consequence when a violation is found. The district court should consider the seriousness of the offense, the nature of the original charge, the record of the defendant while on probation, and any other relevant factors. See id. Clearly, Jaeger’s failure to fulfill the requirements of probation is relevant to the district court’s determination.
For the foregoing reasons, I concur with the decision to uphold the district court’s judgment.
Rose, J., with whom Springer, J., joins, dissenting:
I dissent and will address the majority’s arguments in the order presented.

*1286
The district court erred in quashing appellant’s subpoena of government records regarding an investigation into a search of appellant’s home

I believe that the district court erred in quashing Jaeger’s subpoena because Jaeger had a right to present documents in support of his defense, the document was relevant and not privileged, and compliance with the subpoena would not have been overly burdensome.
Our court has stated that:
Parole and probation revocations are not criminal prosecutions; the full panoply of constitutional protections afforded a criminal defendant does not apply. See Gagnon v. Scarpelli, 411 U.S. 778 (1973); Morrissey v. Brewer, 408 U.S. 471 (1972)). Revocation proceedings, however, may very well result in a loss of liberty, thereby triggering the flexible but fundamental protections of the due process clause of the Fourteenth Amendment.
Anaya v. State, 96 Nev. 119, 122, 606 P.2d 156, 157 (1980).
The United States Supreme Court has stated that few rights are more fundamental than that of the accused to present witnesses and evidence in his own defense. Taylor v. Illinois, 484 U.S. 400, 409-11 (1988). The United States Supreme Court has also stated that prior to a revocation of a defendant’s parole or probation, minimum due process requirements must be met which include the “opportunity to be heard in person and to present witnesses and documentary evidence.” Morrissey v. Brewer, 408 U.S. 471, 489 (1972); see also Anaya, 96 Nev. at 122, 606 P.2d at 158. The majority’s conclusion that Jaeger, as a probationer, did not have the right to subpoena documents in support of his defense violates Jaeger’s constitutional right and is therefore misguided.
While a probationer has the right to present witnesses and documentary evidence, that right is not unfettered, and the accused does not have a right to present evidence that is “incompetent, privileged, or otherwise inadmissible under standard rules of evidence.” Taylor, 484 U.S. at 410. Therefore, Jaeger should have been permitted to admit the investigation report into evidence so long as it complied with the Taylor requirements.
Initially, the district court stated that the investigation report was irrelevant as to a determination of whether Jaeger tested positive for methamphetamine in December 1994 and it quashed the subpoena. However, pursuant to NRS 48.015, relevant evidence is “evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.” *1287 Jaeger’s defense theory was that the Department of Parole and Probation falsified his drug test results in retaliation for Jaeger’s filing of a complaint with Internal Affairs regarding the Department of Parole and Probation’s search of his house. The fact that Chief Justice Shearing refers to this as a “conspiracy theory” in her concurrence does not minimize the fact that it is Jaeger’s defense theory or that the contents of the fiie might have proven that theory. The contents of the investigation report are certainly relevant to Jaeger’s defense because they could show that Department of Parole and Probation employees were biased against Jaeger and had a motive to fabricate the test results. See Stinnett v. State, 106 Nev. 192, 195, 789 P.2d 579, 581 (1990) (concluding that a criminal defendant’s past complaints to Internal Affairs regarding the arresting officer were relevant to show that the arresting officer was biased against the defendant). Therefore, the majority’s conclusion that the report was irrelevant is incorrect.
Because I conclude that the report was relevant, I also must address the State’s argument that the documents were privileged pursuant to several statutes. I conclude that all of the State’s arguments are unpersuasive. The State first argued that the investigation report was privileged pursuant to NRS 49.025(2) which states:
A public officer or agency to whom a return or report is required by law to be made has a privilege to refuse to disclose the return or report if the law requiring it to be made so provides.
The prosecution stated that Luke, as a member of the Internal Affairs division, was obligated by law to conduct investigations and make reports of those investigations. However, the prosecution provided no authority for this conclusion, and after reviewing the statutes and the Nevada Administrative Code provisions regarding the Department of Motor Vehicles and Public Safety, I found no support for the proposition that Luke was obligated by law to make the investigation report. Furthermore, even if authority existed to support the proposition that Luke was obligated by law to make the report, the State has failed to identify, and I have failed to find, any law which permits Luke or the State to refuse to disclose the report.
The State also argues that the investigation report was not subject to discovery pursuant to NRS 174.245(1). This statute authorizes the defendant to inspect books, papers, documents, and other objects in the possession of the prosecution, but “does not authorize the discovery or inspection of reports, memoranda or other internal state documents made by state agents in connection with the investigation or prosecution of the case.” NRS 174.245(1).
*1288 NRS 174.245(1) does not protect the investigation report from discovery. In essence, NRS 174.245(1) codifies the attorney work-product doctrine by shielding from discovery all documents created in connection with the “investigation or prosecution of the case.” The Internal Affairs investigation was not made in connection with Jaeger’s probation revocation hearing; it was made in connection with Jaeger’s complaint against the employees of the Department of Parole and Probation. While the search at issue did result in the discovery of drugs, that discovery of drugs was not at issue in the revocation hearing. Therefore, it is clear that the investigation report was not made in connection with the revocation hearing, and NRS 174.245(1) does not protect the report from discovery.
The State further argues that the investigation report is privileged pursuant to NRS 289.010, generally (the Peace Officer’s Bill of Rights), and NRS 289.080, specifically. NRS 289.080(1) provides that a peace officer has a right to a lawyer or other representative during any type of internal investigatory hearing. NRS 289.080(3), the section relied upon by the prosecution, provides that any information the lawyer or representative obtains from the police officer concerning the investigation is confidential and may only be disclosed under limited circumstances. NRS 289.080(3) does not shield the investigation report from discovery because the statute is concerned with keeping confidential statements made by a peace officer to his counsel during an investigatory hearing. Jaeger’s subpoena did not seek information obtained by a peace officer’s counsel but instead sought the final report of the Internal Affairs investigation.
Jaeger issued the subpoena commanding Dan Luke to produce the Internal Affairs report pursuant to NRS 174.335(1).[1] The district court may quash or modify the subpoena “if compliance would be unreasonable or oppressive.” NRS 174.335(2). In its motion to quash, the prosecution argued that compliance with the subpoena would be unreasonable and oppressive but made no efforts to explain the reasons why. It appears from the record that the results of the investigation were contained in a single file, the production of which could have been easily accomplished, and further, that Investigator Luke was not required to compile any other documents or engage in any function other than producing the final investigation report. Therefore, compliance with the subpoena would not have been unreasonable or overly burden *1289 some; and Jaeger should have been permitted to subpoena the Internal Affairs report as part of his right to present a defense.

The district court erred in refusing to compel the prosecution to call as witnesses those who performed the laboratory analysis of Jaeger’s urine samples

I also feel that the majority is incorrect in its assertion that the district court properly refused to compel the prosecution to call as witnesses the parties that actually performed the laboratory analysis on Jaeger’s urine samples.
First, the refusal to compel the prosecution to call as witnesses the people who conducted the drug tests on Jaeger deprived Jaeger of his right to cross-examine adverse witnesses. This court has stated:
The process due a probationer is determined by balancing the strength of the probationer’s interest in confronting and cross-examining the primary sources of the information being used against him against the very practical difficulty of securing the live testimony of actual witnesses to his alleged violation or to his character while on probation. An important factor in this balancing is the purpose for which the information is offered. If evidence is presented ... to establish a substantive violation of a probation condition, the probationer’s interest in questioning the actual source of the information, and thus testing its reliability, is far stronger than if the information relates merely to his general character while on probation.
Anaya v. State, 96 Nev. 119, 123, 606 P.2d 156, 158 (1980).
Alvarez’s hearsay testimony was offered to establish a substantive violation of a probation condition, and therefore Jaeger had a heightened interest in confronting and cross-examining the people who actually conducted the analysis of his urine sample. This need must be balanced against the difficulty of securing live testimony of actual witnesses, but in this case, one person who performed the analysis was a Department of Parole and Probation employee and the other worked for a laboratory in Reno. Thus, it appears that the prosecution could have easily secured the testimony of these witnesses.
In a similar factual context directly on point, the Ninth Circuit concluded that a releasee’s due process right of confrontation was violated when the releasee was denied the opportunity to either cross-examine the laboratory personnel who conducted the urinalysis, or afforded the opportunity to independently retest his collected samples. U.S. v. Martin, 984 F.2d 308, 314 (9th Cir. *1290 1993).[2] In Martin, the district court admitted two laboratory urinalysis reports based solely on the testimony of a drug counselor who neither conducted the urinalysis nor was able to testify as to the particular test employed or general handling procedures. Id. at 312. While the court acknowledged the high degree of reliability of urinalysis laboratory results, it declined to adopt a per se rule of admissibility in all revocation hearings because urinalysis testing procedures were always susceptible to human error and, more importantly, the court concluded that such a blanket rule would render the defendant’s right of confrontation irrelevant. Id. at 313.
Here, the majority’s conclusion that Alvarez’s testimony constituted reliable hearsay is incorrect because Alvarez had no personal knowledge regarding how the drug tests at issue were actually conducted.[3] Alvarez only testified as to the procedures normally followed by lab technicians and stated that she did not know if these lab technicians followed those procedures. Because Jaeger alleged that the lab technicians did not follow those procedures, Alvarez’s testimony should have been enhanced by calling the lab technicians as witnesses. NRS 51.075(1).

The district court erred in revoking appellant’s probation on the basis of an alleged violation raised sua sponte at the revocation hearing

The “Notice of Preliminary Hearing” form received by Jaeger on February 1, 1995, stated that he would have to appear at a revocation hearing and answer to charges of use of controlled substances, law and conduct violations (alleged child endangerment), and substance abuse evaluation violations. Jaeger was not *1291 notified that his failure to complete his community service might serve as the basis for the revocation of his probation.
The majority has properly stated that due process requires that a probationer be notified of the claimed probation violations prior to the revocation hearing, and it is clear in this case that Jaeger was not provided with advance notice that his community service obligation was going to be an issue at either the preliminary hearing or the final revocation hearing. Furthermore, because Jaeger’s probation did not end until May 22, 1995, over two months after the revocation hearing, Jaeger could have completed his community service requirements in a timely fashion. Therefore, the majority’s conclusion that it was proper for the district judge to consider the amount of community service that Jaeger had completed flies in the face of established United States Supreme Court and Nevada Supreme Court precedent cited by the majority.
For these reasons, I would reverse the district court’s revocation of Jaeger’s probation and remand the case for a new probation revocation hearing.

 NRS 174.335(1) states:
[A] subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein.

 In attempting to distinguish U.S. v. Martin, 984 F.2d 308 (9th Cir. 1993), as persuasive authority, the majority appears to argue that because Jaeger’s ultimate penalty of parole revocation would have been the same for any of his parole violations, the significance of a finding of his illegal drug use, and consequently his right of confrontation in this regard, should be accorded little weight. While Jaeger did not face the prospect of a sentence enhancement for illicit drug use, the record reflects that the primary cause of Jaeger’s revocation, and the ground most emphasized by the prosecution, were the urinalysis test results indicating such use. According to the court in Martin, the breadth of a parolee’s right of confrontation during a revocation hearing rests on numerous factors, including the relationship between the evidence and the court’s ultimate finding, the denial of any meaningful opportunity to refute such evidence, and the consequences of the court’s findings. Id. at 311. Because of the significance of the urinalysis reports, along with the denial of any meaningful opportunity to challenge such evidence, I conclude that Jaeger’s right of due process was violated.

 As such, Chief Justice Shearing’s argument that Jaeger could have adequately determined the bias of the testers by cross-examining Alvarez is erroneous.